(169 App. Div. 864)

### JOHNSON v. AUBURN & S. E. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    November 17, 1915.)

1. CIVIL RIGHTS ☞6—DISCRIMINATION—PLACES OF PUBLIC AMUSEMENT—
DANCE HALLS—"PUBLIC ACCOMMODATION RESORT, OR AMUSEMENT."
    Civil Rights Law (Consol. Laws, c. 6) § 40 as amended by Laws 1913,
c. 265, providing that all persons shall be entitled to the full and equal
accommodations, advantages, and privileges of any place of "public accom-
modation, resort, or amusement," subject only to the conditions and limi-
tations established by law and applicable alike to all persons, and pre-
venting discrimination on account of race, creed, or color, does not
apply to dance halls, though public.
    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 9; Dec.
Dig. ☞6.
    For other definitions, see Words and Phrases, First and Second Series,
Public Amusement; Place of Public Accommodation; Public Resort.]

2. CIVIL RIGHTS ☞6—DISCRIMINATION—DANCE HALLS—EXHIBITIONS—
"PLACE OF PUBLIC AMUSEMENT."
    Where a public exhibition of dancing is given in a dance hall, the hall
is a "place of public amusement," within Civil Rights Law, § 40, as amend-
ed in 1913, prohibiting discrimination in such places on account of race,
creed, or color.
    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 9; Dec.
Dig. ☞6.
    For other definitions, see Words and Phrases, Second Series, Place of
Public Amusement.]

3. CIVIL RIGHTS ☞6—DISCRIMINATION—DANCE HALLS.
    The necessity of discrimination in admitting only congenial persons to a
dance floor indicates an intention of the Legislature to except such
places from the prohibition of Civil Rights Law, § 40 as amended in
1913, against discrimination in places of public amusement on account
of race, creed, or color.
    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 9; Dec.
Dig. ☞6.]

4. CIVIL RIGHTS ☞6—DISCRIMINATION—PLACES OF PUBLIC AMUSEMENT—
DANCE HALLS—FAILURE TO ENUMERATE—EFFECT.
    By the omission expressly to enumerate dance halls in Civil Rights
Law, § 40, as amended in 1913, prohibiting discrimination on account of
race, creed, or color "in places of public accommodation, resort, or amuse-
ment," they are impliedly excluded, since they are not within the mis-
chief to be remedied.
    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. § 9; Dec.
Dig. ☞6.]

5. STATUTES ☞241—CONSTRUCTION—PENAL STATUTES.
    A penal statute must be strictly construed.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec.
Dig. ☞241.]

6. CIVIL RIGHTS ☞14—DISCRIMINATION—PLACES OF AMUSEMENT—DANCE
HALLS.
    One cannot recover for his exclusion from a dance hall, where he failed
to make tender of the admission fee.
    [Ed. Note.—For other cases, see Civil Rights, Cent. Dig. §§ 11, 12; Dec.
Dig. ☞14.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. CIVIL RIGHTS ⬒14—DISCRIMINATION—PLACES OF PUBLIC AMUSEMENT—
TENDER OF ADMISSION FEE.

Although refusal to sell a ticket waives tender, as to civil liability for wrongful exclusion from a dance hall, it is not waiver as to penal liability, but the tender must be made.

[Ed. Note.—For other cases, see Civil Rights, Cent. Dig. §§ 11, 12; Dec. Dig. ⬒14.]

Appeal from Trial Term, Cayuga County.

Action by Carroll H. Johnson against the Auburn & Syracuse Electric Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Ernest I. Edgcomb, of Syracuse (Nottingham, Nottingham & Edgcomb, of Syracuse, of counsel), for appellant.

Oscar Tryon, of Auburn, for respondent.

FOOTE, J. Plaintiff has recovered a verdict of $150 as a penalty under sections 40 and 41 of the Civil Rights Law (chapter 6, Consol. Laws) for refusing to permit plaintiff (a colored man) to enter and dance in a room used for dancing at a resort owned and maintained by defendant. At the foot of Owasco Lake, near Auburn, defendant owns a piece of land known as Lakeside Park. It is maintained as a place of recreation and amusement and for picnics during the summer season, presumably to increase the business of the electric railroad which it operates from Syracuse and Auburn to that point. In this park were flower beds, swing chairs, and benches, and near the center of the park was a building or pavilion, a separate and inclosed part of which was used for dancing, and another separate part as a restaurant, and through the center was an open passage or corridor, in which was a fountain. The pavilion occupied only a small part of the park. For the dancing room, defendant furnished an orchestra during the afternoon and evening and a lady superintendent. An attendant stood at the entrance door of the dancing room, and admittance was gained by purchasing from him buttons which were sold to the men and boys for 10 cents each, and to ladies and girls for 5 cents each, and these buttons were worn or displayed as evidence of payment of the admission fee. There was an outside veranda adjoining the dancing room, supplied with chairs and seats, for the use of the dancers between dances. Girls came to these dances in the afternoon unattended. The place was carefully policed, and great care was exercised by defendant's servants as to who should dance upon the floor and how they should dance, and at times people were ejected from the floor for improper conduct or improper dancing.

In the afternoon of June 12, 1914, plaintiff, who is a colored man, visited the park with several other colored men and women. After amusing themselves about the park for an hour or two, plaintiff and to or three of the women entered the open part of the pavilion and watched the dancing through the windows. Finally they decided to enter the dancing room, and some of them to join in the dancing.

Thereupon plaintiff left the party and went to the attendant at the entrance door and asked to purchase some dancing buttons. The attendant refused to sell him any buttons, and, when asked, "What is your reason?" he replied, "Those are my orders from the railroad company." Plaintiff then said, "Very well, I will trouble you no further," and made no further effort to gain admission. Plaintiff had sufficient money in his pocket to pay for the buttons he wished to buy, but did not exhibit it or make any tender to the attendant.

[1] At the close of plaintiff's case, defendant moved for a dismissal of the complaint upon the ground, among others, that this dancing pavilion is not such a place of public accommodation, resort, or amusement as is contemplated by the statute under which the action is brought; that a tender of the money for the admission fee was necessary before defendant could be subjected to the penalty of the statute. The motion was denied, and the jury were instructed in substance that this dancing pavilion is a place of public accommodation, resort, or amusement within section 40 of the statute, and if plaintiff was refused the privilege of dancing there, and consequently was not afforded the full and equal facilities and privileges of that place, on account of his color, then plaintiff was entitled to recover the penalty prescribed by section 41.

We think the above-stated grounds for defendant's motion for a dismissal of the complaint were good, and that defendant was entitled to have the motion granted upon either or both of these grounds. A room or place for promiscuous dancing is not one of the places of public accommodation, resort, or amusement specified by name in the statute. Section 40, Civil Rights Law, as amended by chapter 265 of the Laws of 1913. The pertinent clauses of the section are as follows:

"All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages and privileges of any place of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employés of any such place, shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages or privileges thereof, or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed or color, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed or color is unwelcome, objectionable or not acceptable, desired or solicited. * * * A place of public accommodation, resort or amusement within the meaning of this article, shall be deemed to include any inn, tavern or hotel, whether conducted for the entertainment of transient guests, or for the accommodation of those seeking health, recreation or rest, any restaurant, eating house, public conveyance on land or water, bathhouse, barber shop, theater and music hall."

It was held in the case of Burks v. Bosso, 180 N. Y. 341, 73 N. E. 58, 105 Am. St. Rep. 762, that sections 1 and 2 of chapter 1042 of the Laws of 1895, which subsequently became, in the same form, sections 40 and 41 of the Civil Rights Law as embodied in chapter 6 of the Consolidated Laws by chapter 14, Laws of 1909, did not apply to a bootblacking stand, and that the refusal of the proprietor of such a

stand to shine the shoes of a colored man on the ground of his color did not subject such proprietor to the penalties prescribed by the act. The form of the act at the time of that decision, and of section 40 of the Civil Rights Law as it remained down to the amendment of 1913, was as follows:

"All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating houses, bathhouses, barber shops, theaters, music halls, public conveyances on land and water, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens."

In construing this section as it then stood, in the Burks Case, Judge Werner, speaking for a unanimous court, among other things, said:

"The statute in question is highly penal. It subjects any person who violates its provisions to a civil penalty at the suit of the person aggrieved, and to a fine or imprisonment as for the commission of a misdemeanor. One of the well-settled canons of statutory construction is that purely statutory offenses cannot be established by implication, and that acts in and of themselves innocent and lawful, cannot be held to be criminal unless there is a clear and unequivocal expression of the legislative intent to make them such. * * * The Legislature seems to have had no difficulty in naming a variety of places and callings that have never been regarded as places of public accommodation under the common law, and if bootblacking stands are to be brought within the purview of the statute under the words 'and all other places of public accommodation' it will require no great stretch of the imagination to apply this statute to innumerable places and callings that have never been, and probably never will be, regarded as subject to legislative control or direction."

[2] The statute, though changed in form, has not been changed in substance, so as to require a different rule of construction than the one applied in the Burks Case. The words "places of public accommodation and amusement" are broad enough to cover this dancing pavilion without the added word "resort," if such a place is within the legislative intent as disclosed by the statute as a whole, or, in other words, within the mischief to be remedied.

The question, therefore, is whether this dancing room or pavilion was at the time plaintiff applied for admission a "place of public accommodation, resort or amusement," within the intent and purpose of the statute. If at the time plaintiff applied for admission there had been in progress or about to be given a public exhibition of dancing furnished by defendant for the entertainment of those admitted to witness it, then I think the statute entitled plaintiff to be admitted as one of the audience. It was so held in reference to skating rink in People v. King, 110 N. Y. 418, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389, where a colored man sought admission to witness a public exhibition of skating. Plaintiff, however, did not seek admission in order to witness any public exhibition of dancing, but for the purpose of himself participating in the dancing.

[3] Was it the intent of the Legislature by this statute to require the proprietor of every place where a public dance is being given to admit all persons who apply and are willing to pay the admission fee? A so-called public dance is usually a private enterprise conducted for

the profit of its proprietor. It is a social meeting of the sexes for the pleasure derived from the society of those they know or whose acquaintance they there form, as well as from the dancing. Its success depends largely upon bringing together people who are mutually congenial and who are willing to associate together for the time being for the pleasure they derive from each other's society and acquaintance, as well as from dancing together or upon the same floor.

If a proprietor of such a place may not exercise his judgment as to who to admit and who to exclude, in order to secure the patronage necessary to success in such an enterprise, then it is manifest he cannot control the character of his place or its patronage. It would not be possible to regulate admission by rules applicable to all which would exclude persons of a certain degree of intoxication or condition of dress or cleanliness or standard of character or reputation in the community. It would seem, therefore, that such a business could not be carried on successfully unless the proprietor is able to discriminate according to his judgment as to persons, male and female, he is to admit to such an intimate association with each other.

[4] In none of the places of public accommodation, resort, or amusement mentioned in the statute by name is there any such intimate association among the persons admitted as patrons or guests, and I think the specification of these places by name enables us to say with reasonable certainty that a dancing hall or room, which is not named, was not intended to be included under the more general words. It is not necessary to say that a place to come under the general words must in all cases be ejusdem generis of those afterwards specially named; but I do say that to be covered by the general words a place not included in those afterward specially named should be one within the mischief to be remedied. In my opinion, a dancing hall is not such a place; at least, it is not clear that it was so intended, and defendant should not be subjected to a penalty unless the right is clear.

[5-7] Moreover, if the statute can be so construed as to apply and cover this dancing pavilion, still I think plaintiff was not entitled to enforce the penalty, because he did not tender the admission fee. This is a penal statute, and must be strictly construed in favor of defendant. Undoubtedly the statement by defendant's agent to plaintiff that he would not sell plaintiff any dancing buttons was a waiver of formal tender by plaintiff of the price of the buttons as respects the civil or contract rights of the parties; not so, I think, as to any criminal liability of defendant for violation of this statute or for the penalty it inflicts upon him. Respondent's counsel refers to People v. King, supra, as an authority to the contrary. While the question was not considered in the opinion, it does not appear from the report of the case that there was any tender of the required admission fee to the skating rink. On examination of the record before the Court of Appeals, it appears, however, that the required fee was actually laid down upon the shelf of the ticket window at the time of the application to purchase admission tickets.

If the foregoing views are correct, the judgment cannot stand, and we need not consider the interesting question as to the power of the

Legislature to impose the rule of this statute upon the proprietor of a dancing hall, or the other grounds for reversal urged by defendant.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs. All concur; KRUSE, P. J., and LAMBERT, J., upon the further ground that the evidence is insufficient to show that plaintiff was discriminated against on account of race, creed, or color.