**GILLESPIE et, Plaintiffs-Appellants, v. LAKE SHORE GOLF CLUB, Inc., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21568.   Decided January 23, 1950.

Chester K. Gillespie, Cleveland, for plaintiffs-appellants.
James H. Nacey, Cleveland, for defendant-appellee.

**OPINION**

By SKEEL, PJ.

This appeal comes to this court on questions of law and fact from a judgment and decree for the defendant. The plaintiff by his petition prayed for a mandatory injunction requiring the defendant to permit the appellants to play golf on a golf course located at the corner of Lake Shore Boulevard and Eddy Road in the Village of Bratenahl, Cuyahoga County, Ohio.

The appellants are negroes and members of the African race, and complaint of discrimination practiced against them solely by reason thereof.

The golf course, for a number of years, had been under the control and management of Carmen Bill as a public course, said Carmen Bill leased the property and equipment from the "Mather Estates" until the end of the season in 1947 when it was acquired by "The Marine Company". Mr. Bill then leased the course and equipment from the new owner.

In 1946 one of the appellants was refused the privilege of playing on the course. He thereupon brought an action against Bill under the civil rights §§12940, 12941 GC. This action was dismissed when Mr. Bill agreed to extend the privileges of the course to the appellant and not to discriminate on the grounds of race or color.

The appellants continued to play each season thereafter until August, 1948. At this time the defendant, claiming to be a sub-lessee of the course from Mr. Bill, and claiming to operate said golf course as a private club, refused appellants the right to play golf on the ground that they were not members of the club. The appellants had made application for membership as requested by defendant but membership was refused to them.

It is the claim of appellants that the course continued to be operated as a public course after it was assigned by Bill to the defendants and that the said club was not a private club but that the new corporation defendant herein was, in fact, a subterfuge through which Bill attempted to avoid the legal consequences of discrimination in operating a place of public amusement.

There is no question from the record but that the Lake Shore Golf Club, as operated by Mr. Bill was a public course to which all persons, without discrimination because of race or color, could use the facilities of the course upon payment of the established charges and conducting themselves in a proper manner. The sole question presented is whether the incorporating of the club in July, 1948, and assigning the lease to the corporation by Mr. Bill changed the character of the course from a public course to a private club to which only members could go to enjoy the privileges of the golf course.

The president of the new corporation was of no help in attempting to show that after July 15, 1948, the date of the organization of the Lake Shore Golf Club, the operation of the golf course was transferred to it as a private club. In fact in one place he testified that:

"* * * the boys who live there as I do, **they pay the same as anybody else on the public course.** The club members of the Lake Shore Country Club (the corporation operating the club house for residence purposes, which was leased and operated separate from the golf course) are residents such as I am, the same as anybody else on the golf course." (Emphasis added.)

The purpose of organizing the golf club corporation was said to be because Bill was unable to make a financial success of the operation of the course after the Marine Company acquired the property, and demanded an increased share of the gross income. Yet, so far as the operation of the course was concerned, the record shows it continued under the direction of Mr. Bill in the same manner as before. He received all of the income and paid the help with his personal checks. There seems to have been no club dues and the only change suggested by the record is that people who came to play golf were asked to sign a membership card. Even this was not required in all cases as is instanced in the case of three witnesses, who testified that they went to the course after the appellants were refused the privileges of the club, on the supposed ground that they were not members, and without signing a membership card or any questions asked as to whether or not they were members, were given the right to play golf, upon paying the fee of seventy-five cents. Certainly these witnesses who were of the white or caucasian race did not meet the obstacle of membership in seeking the right to play golf on the course.

The claim that the course was operated as a private club after the incorporation of The Lake Shore Golf Club Company, and the assigning of the lease by Bill to the corporation, is not supported by the record. The changing of the operation of the course from Bill as an individual to the corporation did not, because of the undisputed manner in which it was operated thereafter, change the course from a public course to a private club.

It requires no citation of authority that places of public amusement cannot discriminate between members of the public seeking the right to enjoy the facilities of such places of amusement, on the ground of race or color. To do so is a clear violation of the civil right sections of the General Code of Ohio.

A decree will therefore be entered for the plaintiffs as prayed for. Exc. Order See Journal.

McNAMEE, J, HURD, J, concur.