### AMOS v. PROM, Inc.
### Civ. No. 571.

United States District Court, N. D. Iowa, Central Division.
Jan. 11, 1954.

See also D.C.Iowa, 115 F.Supp. 127.

George D. Dunn and William Pappas, Mason City, Iowa, for plaintiff.

Frederic M. Miller and Thomas B. Roberts (of Brody, Parker, Miller, Roberts & Thoma), Des Moines, Iowa, and Edward R. Boyle (of Boyle & Schuler), Clear Lake, Iowa, for defendant.

R. Bruce Hughes, Waterloo, Iowa, for Iowa Civil Liberties Union, amicus curiae.

GRAVEN, District Judge.

The plaintiff is a citizen and a resident of the State of Iowa. The defendant is a corporation organized under the laws of the State of Delaware. It is engaged in the operation of a public ballroom, or dance hall, in the City of Clear Lake, Cerro Gordo County, Iowa, known as the Surf. The plaintiff brought this action in this Court. Jurisdiction is based upon diversity of citizenship. The plaintiff is a Negro. In her complaint she alleged that on December 8, 1951, the defendant, because of her color, refused to admit her to its dance hall and that such refusal constituted a violation of the Iowa Civil Rights Act, Sections 735.1 and 735.2, Code of Iowa 1950, I.C.A. The plaintiff asked for the recovery of compensatory and exemplary damages because of such refusal. The pivotal question in the litigation was whether the defendant's dance hall came within

the provisions of the Iowa Civil Rights Act. The Iowa Civil Liberties Union requested, and was granted, leave of Court to file a brief as amicus curiae. The brief and argument of the amicus curiae was in favor of the construction of the Act urged by the plaintiff.

The defendant, Prom, Inc., is a subsidiary of the Aragon Ballroom Corporation. The Aragon Ballroom Corporation owns and operates either directly or by means of subsidiary corporations the Surf Ballroom at Clear Lake, Iowa, the Terp Ballroom at Austin, Minnesota, the Prom Ballroom at St. Paul, Minnesota, and the Aragon and Trianon Ballrooms at Chicago, Illinois. The defendant purchased what was known as the Surf Ballroom in 1946. The ballroom which was on the premises at the time the defendant purchased it burned down in 1947. The present ballroom on the premises was constructed by the defendant in 1948 at a cost of approximately $400,000. The ballroom consists of a large building approximately 175 x 150 feet. There is a ticket cage or box office, the window of which opens to the outside. Beside the ticket cage or entrance, there is a door opening into a large hallway. There are doors in the hallway leading to the dance floor proper. The dance floor is approximately 90 feet by 70 feet in area which will accommodate approximately 800 couples dancing. Outside of the dance floor are rows of booths. There are 203 booths with a seating capacity for 800 people. The booths are available for patrons by reservation. Those desiring to enter the ballroom first purchase tickets at the ticket cage or box office. They then go through swinging doors alongside the ticket cage and enter a large hallway. The ticket seller is not authorized to decide who shall be permitted to purchase tickets. There are doors leading from the large hallway into the ballroom proper. In front of those doors there are aisles formed by posts. The aisles may be opened or closed by means of covered ropes or chains. Ticket takers are stationed at the head of the opened aisles. Those ticket takers take the tickets. They also "screen" the ticket holders for purposes of admission to the ballroom proper. The admission charges range from 90 cents to $2 per person depending upon the day of the week and the orchestra. Patrons who are admitted to the ballroom proper may dance the entire evening without further charge.

The defendant holds dances regularly at the ballroom on Friday and Saturday nights of each week. During the summer months five dances a week are usually held. Dance orchestras of local and national reputation furnish music for the dances. On dance nights the music for dancing begins at 9:00 p. m. and ends at 1:00 a. m. of the following day with intermission for the orchestra during the evening. The members of the orchestra do not leave the platform except for the intermission. The ballroom is open approximately 30 minutes before the music starts and is closed as soon as the music stops and the patrons can secure their wraps and leave. The defendant advertises its dances in newspapers of general circulation, by posters and other means. The advertisements are addressed to the public generally and contain no mention of any restrictions in the matter of attendance. Around 200 people in the area in which the defendant solicits patronage receive passes to the ballroom for their assistance in advertising the dances conducted by the defendant.

In one corner of the ballroom there is a counter where patrons may purchase refreshments. Waitresses also take orders and serve refreshments to patrons in the booths. The articles available for sale to patrons consist of soft drinks, peanuts, popcorn, gum, beer, and cigarettes. The prices charged for those items are those normally charged at other retail outlets. The purchase of those items is optional with the patrons. However, no sales are made to those not patrons. There are no facilities for cooking and the ballroom has no silverware, table linens, or general dishes.

The advertisements of the defendant do not represent or advertise the ballroom as one where meals or other food is served. The defendant has a license from the City of Clear Lake to conduct a public dance hall. It also has a beer license and a cigarette license from the same city. The primary purpose of those attending the ballroom is to dance. There are no floor shows, vaudeville acts, plays, dramatic sketches, or similar entertainment provided to the patrons of the ballroom. The number of people who purchase tickets to the ballroom and who do not avail themselves of dancing privileges is negligible.

At different times the defendant conducts what are known as "old time" dances consisting largely of square and mixer dances. On occasions the defendant conducts a dance at which only unescorted men and women are admitted. On occasions the defendant conducts a "teen age" dance at which only those in their teens are admitted. Usually, at the dances conducted by the defendant, the dancing consists of the usual type of couple dancing, i. e., waltzes, two steps, and fox trots, interspersed with so-called group and mixer dances. The so-called group and mixer dances consist of circle and square dances, grand left and right marches and "Bunny Hops." In "Bunny Hops" the dancers form a continuous line and proceed around the dance floor doing rhythmic steps. In the grand right and left marches the dancers form two lines—one line composed of women and the other of men—and couples are formed as the two lines come together. In the so-called circle dances the women form one circle facing out and the men form an outside circle facing in. The circles move in opposite directions. At times designated by the orchestra leader the circles are stopped and couples are formed for couple dancing. The couples are formed by the men taking for their dancing partners the women opposite them at the time the circles are stopped. The square dances are of the usual type. It is optional with the patrons whether they participate in any particular dance or dances. The defendant denies dancing privileges to those who are improperly dressed, to those who are lacking in cleanliness, to those who are under the influence of liquor, and to those who are guilty of misconduct. There was no claim on the part of the defendant that the plaintiff, or any of the members of her group, came within those categories.

Some time prior to December 8, 1951, Lionel Hampton's Dance Band had played at the Surf. It is an all colored band. At that time a number of colored men and women, including the plaintiff and her husband, sought admittance to the Surf and were admitted. The defendant advertised in a Mason City newspaper that on December 8, 1951, the same band would again appear at the Surf. The plaintiff is a married woman whose character and standing is not questioned. Her husband is in the employ of the City of Mason City. Mason City is approximately ten miles from Clear Lake. The advertisement of the coming appearance of Lionel Hampton's Band attracted the attention of the plaintiff, her husband, and some of their acquaintances. They decided to attend the Surf on the evening of that appearance. On the evening of December 8, 1951, a group of eight, consisting of the plaintiff, her husband, and six of their acquaintances, went to the Surf. All of the group were colored. Tickets were purchased by members of the group for the group and they entered into the large hallway. When the group sought to go from the large hallway into the ballroom proper they were refused admittance by a ticket taker stationed at one of the aisle entrances. They asked to see the manager. After some delay the manager was located and came to the hallway and met with the group. One of the group stated to the manager that colored people had been admitted at the previous appearance of Lionel Hampton's Band and asked why they were now being refused admittance. The manager informed them that personally he had

nothing against the members of the group or against colored people in general but that he had received word from the main office of the defendant at Chicago that it was against the policy of the defendant to admit colored people to its dances. After some discussion the group left. Refunds were made of the purchase price of the tickets. There was no disorder at any time. The character and deportment of the members of the group was not and is not questioned. Earlier in the trial of the case the defendant apparently sought to claim that the group were refused admittance because the ballroom was filled to capacity at the time the group sought admittance, yet the evidence did not support that claim. The attendance on the evening in question was approximately 1,300. It was and is the view of the Court that under the evidence it is uncontroverted that the defendant's refusal to admit the plaintiff to its ballroom on December 8, 1951, was based solely upon her color.

The plaintiff in her complaint asked damages in excess of the $3,000 jurisdictional amount required by 28 U.S.C.A. § 1332. Earlier in this litigation the defendant moved to dismiss the plaintiff's complaint for lack of jurisdiction on the ground that under the Iowa law it would be legally impossible for the plaintiff to recover damages in excess of $3,000. That motion was denied. Amos v. Prom, Inc., D.C.Iowa 1953, 115 F.Supp. 127.

At the end of all of the evidence the defendant moved for a directed verdict on the ground that the defendant's dance hall was not within the provisions of the Iowa Civil Rights Act. The motion was denied. This opinion is explanatory of that ruling. The defendant also raised the same question by exceptions to instructions, although under the rule recently adopted in this Circuit it was not necessary for it to do so in order to have the denial of its motion for a directed verdict reviewed on appeal. See Coca Cola Bottling Co. v. Hubbard, 8 Cir., 1953, 203 F.2d 859, 861, 862. The Court instructed the jury that the defendant's dance hall was within the provisions of the Iowa Civil Rights Act and that the defendant had refused the plaintiff admittance to its dance hall solely because of her color and that such refusal was in violation of that Act and that the only question for the jury to determine was the amount of damages to which the plaintiff was entitled. The jury was instructed that in addition to an award of compensatory damages an award of exemplary damages might be made. The jury awarded the plaintiff $400 as compensatory damages but did not award exemplary damages.

The Iowa Civil Rights Act, Section 5008, Code of Iowa 1897, as amended by Chapter 216, Acts of 40th General Assembly 1923 provides as follows:

"Infringement of civil rights. All persons within this state shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities and privileges of inns, restaurants, chop houses, eating houses, lunch counters and all other places where refreshments are served, public conveyances, barber shops, bath houses, theaters and all other places of amusement. Any person who shall violate the provisions of this section by denying to any person, except for reasons by law applicable to all persons, the full enjoyment of any of the accommodations, advantages, facilities or privileges enumerated herein, or by aiding or inciting such denial, shall be guilty of misdemeanor."

In the Code of Iowa 1950, I.C.A., the Act appears in two Sections, which are Sections 735.1 and 735.2. The 1897 Code of Iowa is the last Code enacted as such by the Iowa Legislature. All Codes of Iowa subsequent to that Code are compilations of the Iowa Statutes. The division of the Act into two Sections in the later Codes of Iowa is editorial division.

On March 1, 1875, Congress enacted an Act known as the Federal Civil Rights Act. 18 Stat. 335, c. 114. It provided that all persons within the jurisdiction of the United States "shall be entitled

to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, public conveyances on land or water, theaters, and other places of public amusement". The Act provided criminal penalties for violations thereof. It also provided civil remedies to those who were denied the rights afforded them thereunder. In Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the Act was held unconstitutional. Following the invalidation of the Federal Act, eighteen states, including Iowa, enacted Civil Rights Acts. A list of those Acts with their statutory citations appears in the case of Morgan v. Commonwealth of Virginia, 1946, 328 U.S. 373, 382, footnote 24, 66 S.Ct. 1050, 90 L.Ed. 1317, 165 A.L.R. 574. There is also a discussion of the State Acts in Bob-Lo Excursion Co. v. People of State of Michigan, 1948, 333 U.S. 28, 33, 68 S.Ct. 358, 92 L.Ed. 455. All of the State Acts are somewhat similar to the invalidated Federal Act and in some cases identical. Such Acts have been upheld as a valid exercise of the police power. See A.L.R. Annotation to Pickett v. Kuchan, 1926, 323 Ill. 138, 153 N.E. 667, 49 A.L.R. 499. The case of Brown v. J. H. Bell Co., 1909, 146 Iowa 89, 123 N.W. 231, 124 N.W. 901, 27 L.R.A.,N.S., 407, Ann.Cas.1912B, 852, was an action brought under the Iowa Act which is sometimes referred to as the Iowa Civil Rights Statute. In that case the Iowa Supreme Court stated at page 233 of 123 N.W.: "There is no doubt of the validity of the statute as applied to anything in the nature of an inn, public conveyance, public bathhouse, theater, or other place of amusement."

In an excellent and informative article, Exclusion, Ejection and Segregation of Theater Patrons, by Max W. Turner and Frank R. Kennedy, 32 Iowa L.Rev. 625 (1947), the authors discuss among other matters the civil remedies available under the state Civil Rights Acts. It appears (pp. 635, 636) that eleven of those Acts made specific provisions for civil remedies. It further appears (p. 636) that in five states—Colorado, Illinois, Indiana, Ohio, and Wisconsin—the person aggrieved must choose between a civil and criminal action, one being a bar to the other. Some courts have construed such Acts as affording relief only when a discrimination is based upon race, creed or color. Woollcott v. Shubert, 1916, 217 N.Y. 212, 111 N.E. 829. L.R.A.1916E, 248. The California Act, Civ.Code, § 51 et seq., similar to the Iowa Act, contains no reference to race, creed or color. The California Supreme Court held that exclusion from an establishment included in the Act even though not based upon race, creed or color came within the Act. Greenberg v. Western Turf Ass'n, 1903, 140 Cal. 357, 73 P. 1050; Id., 1905, 148 Cal. 126, 82 P. 684; affirmed 204 U.S. 359, 27 S.Ct. 384, 51 L.Ed. 520. However, it seems plain considering the time and the setting in which the Iowa and other state Civil Rights Acts were passed that their principal purpose was to prevent discrimination based upon color.

It has been held that even though a state Civil Rights Act makes express provision for civil remedies on the part of the persons aggrieved, yet such persons are not confined to those remedies. Orloff v. Los Angeles Turf Club, 1947, 30 Cal.2d 110, 180 P.2d 321, 171 A.L.R. 913. In the California Act express provision was made for the recovery of compensatory damages and a penalty by persons aggrieved. The plaintiff in the case just referred to was refused admission to the defendant's race track. He sought an injunction to prevent the defendant from continuing to exclude him. The trial court held the plaintiff was restricted to an action for damages. On appeal that holding was reversed. The California Supreme Court held that the plaintiff was not restricted to the remedies provided by the Act. See Gillespie v. Lake Shore Golf Club, Inc., Ohio App. 1950, 91 N.E.2d 290, where an injunction was granted restraining discrimination because of color by a golf course. However, the authorities are not in accord as to whether the remedies enumerated in the Civil Rights Acts are exclusive.

See Annotation, 171 A.L.R. 920. It has also been held that though a Civil Rights Act provides only for criminal penalties, yet a person aggrieved by the violation thereof may maintain a civil action for damages for such violation. See Annotation, 171 A.L.R. pp. 921, 922. The Iowa Act provides only criminal penalties for violations of it. However, the Iowa Supreme Court regards the Act as being remedial in character, and a person aggrieved by a violation thereof may maintain a civil action for damages. Humburd v. Crawford, 1905, 128 Iowa 743, 105 N.W. 330; Brown v. J. H. Bell Co., 1910, 146 Iowa 89, 123 N.W. 231, 124 N.W. 901, 27 L.R.A.,N.S., 407.

The Iowa Act was enacted in 1884 by the Twentieth General Assembly of Iowa. Chapter 105, Acts of Twentieth General Assembly. In 1892 the Act was amended by adding the words "inns" and "bathhouses" to the list of places included in the Act. As thus amended it was re-enacted by the Iowa Legislature in connection with the enactment of the 1897 Code of Iowa. In 1923 the Act was amended to provide that violations of the Act were punishable by a fine not to exceed $100 or imprisonment in the county jail not to exceed thirty days. Chapter 216, Acts of Fortieth General Assembly. Previous to that amendment the Act provided that a violation of the Act constituted a misdemeanor, but no specific punishment was specified. In 1953 the Iowa Legislature enacted Chapter 84 of the Acts of the 55th General Assembly relating to cemeteries, I.C.A. § 566A.1* et seq. It is a chapter of some length. Section 8 of that chapter makes unlawful any discrimination on account of race or color by any privately owned cemetery. Section 1 excepts from the provisions of the chapter cemeteries maintained by religious or fraternal organizations. That legislation followed not long after the Sergeant Rice burial controversy. As to the Sergeant Rice burial matter, see Rice v. Sioux City Memorial Park Cemetery, Iowa 1953, 60 N.W.2d 110, and Rice v. Sioux City Memorial Park Cemetery, D.C.Iowa 1952, 102 F.Supp. 658. The Iowa cases up to 1952 which involved the Act are discussed in an article by Goostree entitled, the Iowa Civil Rights Statute: A Problem of Enforcement, 37 Iowa L.Rev. 242 (1952). The Act and discrimination cases prior to the Act are discussed in an article by Schaffter entitled, the Iowa "Civil Rights Act", 14 Iowa L.Rev. 63 (1928). The Act is also discussed in Exclusion, Ejection and Segregation of Theater Patrons by Max W. Turner and Frank R. Kennedy, 32 Iowa L.Rev. 625 (1947) and in Amos v. Prom, Inc., D.C.Iowa 1953, 115 F.Supp. 127. Section 368.8, Code of Iowa 1950, I.C.A. provides that cities and towns "shall have power to limit the number of, regulate, license or prohibit: 1. Public dance halls, skating rinks, swimming pools * * *. Any place open to the public where dancing is allowed shall, under this section, be considered a public dance hall notwithstanding the fact that food is served and a restaurant license held under section 170.2." For cases on the matter of public regulation of dance halls see Annotation 48 A.L.R. 144 and supplemental annotation 60 A.L.R. 173. In the case of Bowlin v. Lyon, 1885, 67 Iowa 536, 25 N.W. 766, 56 Am.Rep. 355, the defendant, a proprietor of a skating rink, was sued for damages for denying the plaintiff admission to the rink because he was colored. The denial took place prior to the enactment of the Iowa Civil Rights Act. At the time skating rinks were not subject to licensing by municipalities or by the state. The Iowa Supreme Court held that the refusal of the defendant to admit the plaintiff because of his color did not give rise to a cause of action. The Iowa Court, after referring to the common law duty of innkeepers and common carriers to serve the public without discrimination, goes on to state at page 768 of 25 N.W.:

"It may be that the manager of a place of public amusement, who carries on his business under a license granted him by the state, or a municipal corporation organized under

the laws of the state, would be subject to the same restrictions. We incline to think that he would; for, as he carries on the business under an authority conferred by the public, the presumption is that the intention was that whatever of advantage or benefit should result to the public under it should be enjoyed by all its members alike. The power which granted the license represented each member of the public in making the grant, and each member, with reference to these privileges which accrue to the public under it, must be on an equality with every other member. * * *"

Counsel for the plaintiff called attention to the fact that the defendant had been granted a license by the City of Clear Lake, Iowa, to operate a public dance hall and also called attention to the dictum of the Iowa Supreme Court just set forth, but stated that the plaintiff's action was based upon the provisions of the Iowa Civil Rights Act.

The defendant made rather a detailed showing as to the matter of the serving of refreshments at its dance hall. This was apparently done upon the theory that the plaintiff might claim that the defendant's establishment came within the provision of the Act relating to "places where refreshments are served". However, counsel for the plaintiff stated that plaintiff's action was not based upon that provision of the Act but was based upon the provision of the Act which relates to "theaters and all other places of amusement." It was the contention of the defendant that its ballroom or dance hall does not come within that provision of the Act or any other provision of the Act. The plaintiff does not claim that the defendant's dance hall comes within any other provision of the Act other than the provision relating to "theaters and all other places of amusement." In the present case the defendant sold tickets to the plaintiff and the other members of her group and then refused to honor them. Counsel for the plaintiff stated that her action was an action in tort for violation of the Act and not an action for breach of contract based upon the refusal of the defendant to honor her ticket. In the case of Anderson v. Pantages Theatre Co., 1921, 114 Wash. 24, 194 P. 813, where the defendant refused to honor the plaintiff's theater ticket because of his color, in violation of the Washington Civil Rights Act, Rem.Code 1915, § 2686, it was held that the plaintiff's action based on such refusal was an action in tort and not for breach of contract. The plaintiff's action is not based on any federal statute nor on the Fourteenth Amendment to the Constitution of the United States but is based solely upon the Iowa Civil Rights Act. Jurisdiction in this case is based solely upon diversity of citizenship.

The construction and interpretation of the Iowa Civil Rights Act by the Iowa Supreme Court is governing. The Iowa Supreme Court has not passed upon the question as to whether dance halls come within the provisions of the Act. There are only five cases in which an Iowa Supreme Court has dealt with or referred to the Act. In the case of State v. Hall, 1887, 72 Iowa 525, 34 N. W. 315, an indictment charging a violation of the Act was held to be insufficient. In the case of Humburd v. Crawford, 1905, 128 Iowa 743, 105 N.W. 330, the Court sustained an award of damages against an innkeeper who refused to serve the plaintiff because of his color. In the case of Brown v. J. H. Bell Co., 1910, 146 Iowa 89, 123 N.W. 231, 124 N.W. 901, 27 L.R.A.,N.S., 407, Ann. Cas.1912B, 852, the Court held that a booth at which free samples were distributed as an independently operated part of an exhibition did not come within the provisions of the Act. In State v. Katz, 1949, 241 Iowa 115, 40 N.W.2d 41, the Court affirmed the conviction of the manager of a drug store who had discriminatorily denied service to Negroes at the store's soda fountain. In the case of Rice v. Sioux City Memorial Park Cemetery, Iowa, 1953, 60 N.W.2d

110, the Court stated that cemeteries had not been included in the Iowa Act.

The defendant in the present case pointed out that if the Act is construed as to bring its dance hall within the Act for purposes of civil liability such construction would also bring it within the Act for purposes of criminal prosecution, and claimed that it is a statute which is penal in character and should be strictly construed. In the case of Brown v. J. H. Bell Co., supra, the Iowa Supreme Court stated at page 233 of 123 N.W.: "The statute is penal in character, and it is held by all courts that it should be strictly construed." In the case of Rice v. Sioux City Memorial Park Cemetery, supra, the Iowa Supreme Court, after stating that the Iowa Legislature had not declared private cemeteries to be within the Act, then further states at page 116 of 60 N.W.2d: "Having named such things as lodging houses, restaurants and places of amusement * * * the expression 'expressio unius est exclusio alterius' is applicable here." The plaintiff in the present case pointed out that in the case of State v. Katz, supra, a conviction of a charge of refusal to serve Negroes at a "soda fountain" was sustained, although soda fountains are not specifically named in the statute. The plaintiff in the present case further pointed out that "places of amusement" are specifically named in the Act and asserted that the defendant's dance hall is a place of amusement and it is therefore expressly included in the Act, and that neither the strict construction rule nor the "expressio unius" maxim would exclude it. The answer of the defendant to that contention of the plaintiff was two-fold in character. It claimed that its dance hall is not a place of amusement as that term is generally used. It further claimed that if its dance hall is a place of amusement in the general sense of that term, yet it is not such a place of amusement as the Iowa Legislature intended to include in the Act by the use of the term "places of amusement."

The term "places of amusement" or "place of amusement" has frequently been used in connection with Civil Rights Acts, zoning laws, licensing laws, and tax laws. Where the entertainment available at particular establishments was participative in nature those operating such establishments have frequently asserted that such establishments were not "places of amusement" within the provisions of particular statutes and that the term "places of amusement" as used in such statutes had reference to establishments where the entertainment was exhibitive in character. The basis of that claim was that establishments at which the parties amused themselves by participative activity were not "places of amusement" but were rather places of recreation or places of athletic activity. That claim has been made in connection with bowling alleys, dance halls, roller skating rinks, billiard rooms, and miniature golf courses.

In 2 C.J., p. 1331, it is stated that the term amusement is "synonymous with diversion, entertainment, recreation, pastime, sport." See also 3 C.J.S., page 1060. In the case of In re City of Enid, 1945, 195 Okl. 365, 158 P.2d 348, at page 352, 159 A.L.R. 358, the Court states: "Although the words 'amusement' and 'recreation' are not identical in meaning, they are synonymous when related to the passing of time in pleasant or agreeable occupations." The Court in that case held that swimming pools were "places of amusement" under a statute levying a tax upon admissions to "places of amusement." Laws 1935, c. 66, art. 7, § 4(a). A bowling alley was held a place of amusement under a zoning law. Tranfaglia v. Building Com'r, 1940, 306 Mass. 495, 28 N.E.2d 537. A miniature golf course was held to be a place of public amusement under a licensing statute. Jaffarian v. Building Com'r, 1931, 275 Mass. 267, 175 N.E. 641, 74 A.L.R. 403. The Court in that case stated in regard to the miniature golf course at page 642 of 175 N.E.: "While it has aspects of

athletic interest, it has the attributes of a public amusement." A roller skating rink was held to be a "place of amusement" under the Wisconsin Civil Rights Act, St.1898, § 4398c. Jones v. Broadway Roller Rink Co., 1948, 136 Wis. 595, 118 N.W. 170, 171, 19 L.R.A.,N.S., 907.

In the case of City of Chicago v. Green Mill Gardens, 1922, 305 Ill. 87, 137 N.E. 126, the defendant was convicted of operating a dance hall without a license from the City of Chicago. On appeal the defendant contended that its dance hall did not come within the state statutory provisions granting licensing powers to municipalities. On appeal the conviction was affirmed. The Supreme Court of Illinois stated at page 128, of 137 N.E.: "Cities and villages are granted specific power by the aforesaid provisions to license, tax, and regulate amusements and places of amusement. Webster says that the word 'amusement' is synonymous with diversion, entertainment, recreation, pastime, and sport. It certainly cannot be successfully claimed that dancing to the music of an orchestra is not an amusement." In the case of Richards v. Davison, 1916, 45 App.D.C. 395, 396, there was involved among other questions the authority of the commissioners of the District of Columbia to revoke a dance hall license under an Act of Congress authorizing the commissioners to revoke licenses of the "proprietor of a theater or other public place of amusement". 31 Stat. 1463. The Court held adversely to the dance hall proprietor. The Court stated at page 404 of 45 App. D.C.: "It is not contended that a dance hall is not a public place of amusement, nor could it well be." In the case of Commonwealth v. Quinn, 1895, 164 Mass. 11, 40 N.E. 1043, the defendant was convicted of violating a statute which required a license for "shows, public amusements and exhibitions of any description." Pub.St. c. 102, § 115. He operated a dance hall to which the public was admitted upon the payment of a small fee. The defendant contended that the words "public amusement" were limited to "entertainments where the entertainers offer the amusement and the public is passive." The Massachusetts Supreme Court rejected that contention and held that the words "public amusement" were to be taken in a popular sense and were not to be taken in a sense that would confine them to public amusements of the nature of shows and exhibitions. In the case of Pearson v. City of Seattle, 1896, 14 Wash. 438, 44 P. 884, 885, there was involved a city ordinance which required licenses for "circuses, sideshows, skating rinks, operas, concerts, theaters, shows, exhibitions and other public amusements". The Court held that a public dance was included within the general phrase "other public amusements".

It seems clear that the term "places of amusement" when that term is used in its usual sense includes dance halls. It is well settled that statutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them. Deputy v. Du Pont, 1940, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Old Colony R. Co. v. Commissioner, 1932, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484; De Ganay v. Lederer, 1919, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042. In the case of Westerlund v. Black Bear Mining Co., 8 Cir., 1913, 203 F. 599, 605, 607, the United States Court of Appeals for this Circuit, in discussing the meaning to be assigned to certain words in a statute, stated: "The legal presumption is that the Legislature used, and intended to use, these words in this statute in their usual sense at the time the law was passed, unless it clearly appears that they intended to use it in a more restricted or different sense." That canon of construction is applicable to words used in Civil Rights Acts. Darius v. Apostolos, 1919, 68 Colo. 323, 190 P. 510, 511, 10 A.L.R. 986, 989.

It was the claim of the defendant that in the enactment of the Iowa Civil Rights Act the Iowa Legislature did use the words "places of amusement" in a

restricted or different sense. The defendant in support of that claim relied upon the ejusdem generis rule of construction.

The rule of ejusdem generis is to be used as an aid in ascertaining the intent of a statute and not to thwart it. United States v. Gilliland, 1941, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598. In the case of Lamere v. City of Chicago, 1945, 391 Ill. 552, 63 N.E.2d 863, at page 866 in discussing the rule, the Court states: "It cannot be applied to defeat the evident purpose of the statute or to restrict the scope of subjects the Legislature intended to include within the act. Gillock v. People, 171 Ill. 307, 49 N.E. 712. In Sutherland on Statutory Construction, it is said: 'This rule can be used only as an aid in ascertaining legislative intent and not for the purpose of contravening the intention or of confining the operation of the statute within narrower limits than was intended by the law maker.'" That rule was made use of by the Iowa Supreme Court in the Civil Rights Act case of Brown v. J. H. Bell Co., supra. The Iowa Supreme Court in that case defined that rule as follows in that case at page 234 of 123 N.W.: "* * * * where specific words of the same nature are used in a statute followed by the use of general ones, these general terms take their meaning from the specific ones and are restricted to the same genus; in other words, comprehend only those things of the same kind as the specific ones." The rule serves to prevent general words from extending their operation into a field not intended. Phillips v. Houston Nat. Bank, 5 Cir., 1940, 108 F.2d 934, 936. It was the claim of the defendant in the present case that where in statutes relating to amusement establishments the general words "places of amusement" or the general word "amusements" are preceded by the specific enumeration of amusement establishments in which the entertainment provided is exhibitive in character, that under the rule of "ejusdem generis" the words "other

places of amusement" are limited in their scope to such kind of establishments. The portion of the Iowa Act here material includes "theaters and all other places of amusement." In the case of Lamere v. City of Chicago, 1945, 391 Ill. 552, 63 N.E.2d 863, 865, there was involved an Illinois statute which granted municipalities the power to license, tax, regulate or prohibit among other things "theatricals and other exhibitions, shows and amusements." S. H.A. ch. 24, § 23–54. The plaintiffs attacked the validity of an ordinance of the City of Chicago which required licensing of automatic musical instruments claiming that the ordinance went beyond the authority granted by the Legislature. The contention of the plaintiff in that case in connection with the rule of "ejusdem generis" was somewhat similar to the contention of the defendant in the present case. The Court in that case, in discussing that contention, states at page 865 of 63 N.E.2d: "If the rule of ejusdem generis is applied as contended for by plaintiffs, then the word 'theatricals' is the principal word that casts a shadow of meaning over the words that follow; that is, those forms of entertainment which are usually referred to as exhibitions, shows or amusements would be excluded from the act unless they were of or pertained to the theater." The Court rejected that contention and held that the words "exhibitions, shows and amusements" in the statute were to be given their usual and ordinary meaning.

The case of Stiska v. City of Chicago, 1950, 405 Ill. 374, 90 N.E.2d 742, involved the same statute that was involved in the case of Lamere v. City of Chicago just referred to. In the Stiska case a number of persons operating bowling alleys, billiard parlors and poolrooms sought to enjoin the enforcement of a city ordinance which imposed a tax upon such establishments. It was their claim that the ordinance went beyond the statutory authority granted by the legislature authorizing municipalities to tax "theatricals and other exhibitions,

shows and amusements," since the entertainment available at their establishments did not constitute "amusement." The Court states at page 745 of 90 N. E.2d:

"* * * The situation here sums itself up as to whether or not public participation in billiards and pool games is an 'amusement' within the meaning of * * * the Cities and Villages Act. * * * In the case of City of Chicago v. Green Mill Gardens, 305 Ill. 87, 137 N.E. 126, we said, 'It certainly cannot be successfully claimed that dancing to the music of an orchestra is not an amusement.' Appellants contend that this is to be differentiated from the entertainment of bowling by public participation because of the fact that an orchestra furnishing music to the dancers offers for entertainment something more than the mere public participation. This seems to draw a very fine distinction without a difference, as 'amusement' is synonymous with diversion, entertainment, recreation, pastime and sport. * * *"

The plaintiffs contended that under the rule of ejusdem generis since the word "amusements" in the statute was preceded by the words "theatricals and other exhibitions, shows," the only amusements covered by the statute were those which were exhibitive in character. The Court rejected that contention stating at page 747 of 90 N.E.2d: "We are of the opinion, from the language as used, that the term 'amusements' does not limit the scope of the statute to exhibitive entertainment."

The case of Youngstown Park & Falls Street Ry. Co. v. Tokus, 1915, 4 Ohio App. 276, 22 Ohio Cir.Ct.R.,N.S., 417 involved the Ohio Civil Rights Act, Gen. Code, § 12940. The provisions of that Act were made applicable to those owning or in charge of "an inn, restaurant, eating house, barber-shop * * * theater * * * or any other place of public accommodation or amusement".

The defendant Railway was the owner of a park at which there were certain amusements including a dancing pavilion. The plaintiff Tokus, a young colored man, purchased a ticket to the dancing pavilion. Because of his color he was requested to leave the pavilion. He brought a civil action in the Court of Common Pleas to recover the penalty provided for by the Act and recovered judgment. On appeal the defendant Railway claimed that under the rule of ejusdem generis its dancing pavilion did not come within the Act. The Ohio Court of Appeals rejected that contention stating at page 281 of 4 Ohio App.: "* * * we think that a public dancing pavilion comes under the provisions of this statute included in 'other place of public accommodation and amusement.' " The defendant in the present case claimed that the maintenance by the defendant in that case of the dancing pavilion was auxiliary to its business as a common carrier and that it came within the doctrine of the case of Johnson v. Auburn & Syracuse Electric R. Co., next referred to.

The case of Johnson v. Auburn & Syracuse Electric R. Co., 1918, 222 N.Y. 443, 119 N.E. 72, L.R.A.1918F, 824, involved the New York Civil Rights Law, McK. Consol. Laws, c. 6, § 40. The New York Act included "any places of public accommodations, resort or amusement". The defendant Railway Company operated an electric trolley line, and it owned and maintained a public park situated on a lake for the purpose of aiding its trolley business. There were a number of amusements in the park, including a dancing pavilion. The plaintiff, a young colored man, came to the park on one of the defendant's cars. The defendant excluded him from the dancing pavilion. He brought a civil action to recover the penalty provided for in the Act, and prevailed in the trial court. The Appellate Division reversed 1915, 169 App. Div. 864, 156 N.Y.S. 93 and held that the dancing pavilion did not come within the Act. The Appellate Division was in turn reversed by the Court of Appeals.

The Court of Appeals held under the particular circumstances that the dancing pavilion was "a place of public accommodation, resort, or amusement" within the Act. That Court stated as follows at page 74 of 119 N.E.:

"The defendant in its business as a public service corporation comes within the express language of the statute so far as it maintains a 'public conveyance on land or water.' The park in question was concededly maintained as a public place. It was not maintained as an independent business, but as an auxiliary to the defendant's passenger business and in connection therewith. It and the amusements afforded therein are maintained for the health, comfort, benefit, pleasure, happiness, and accommodation of the defendant's passengers. The purpose of its effort in their behalf is to increase its transportation business. It is in fact and as a matter of law an incident and auxiliary thereto. By the express language of the statute the bathhouses and restaurant are subject to its provision, and the other accommodations and amusements of the park, including the dancing floor, maintained as they are by the defendant as an electric railroad and public service corporation, cannot be separated therefrom and held to be an independent and private enterprise."

The defendant in the present case claimed that the defendant Railway in the Johnson case was held liable in that case solely upon the ground that the dancing pavilion was auxiliary to its business as a carrier, and, therefore, the decision in the Court of Appeals is not in point on the question presented in this case. The decision of the Appellate Division in that case holding that the defendant's dancing pavilion was without the Act was based upon the ground that the Legislature did not intend to include public dances within the Act by the use of the words "place of public accommodation, resort, or amusement." The Appellate Division in its decision did not refer to or discuss the matter of the defendant's dancing pavilion being included within the Act because of its connection with the defendant's carrier business. It is the claim of the defendant in the present case that the Court of Appeals reversed the Appellate Division solely on the ground of such connection, and that the decision of the Appellate Division is authority for the proposition that, apart from a carrier connection or connection with another business specifically named in the Act, a public dance hall is not a place of public amusement within the intent and meaning of the Civil Rights Act. The defendant in the present case called attention to the following portion of the opinion of the Appellate Division at pages 96, 97 of 156 N.Y.S.:

"Was it the intent of the Legislature by this statute to require the proprietor of every place where a public dance is being given to admit all persons who apply and are willing to pay the admission fee? A so-called public dance is usually a private enterprise conducted for the profit of its proprietor. It is a social meeting of the sexes for the pleasure derived from the society of those they know or whose acquaintance they there form, as well as from the dancing. Its success depends largely upon bringing together people who are mutually congenial and who are willing to associate together for the time being for the pleasure they derive from each other's society and acquaintance, as well as from dancing together or upon the same floor.

"If a proprietor of such a place may not exercise his judgment as to who to admit and who to exclude, in order to secure the patronage necessary to success in such an enterprise, then it is manifest he cannot control the character of his place or its patronage. It would not be possible to regulate admission by rules

applicable to all which would exclude persons of a certain degree of intoxication or condition of dress or cleanliness or standard of character or reputation in the community. It would seem, therefore, that such a business could not be carried on successfully unless the proprietor is able to discriminate according to his judgment as to persons, male and female, he is to admit to such an intimate association with each other.

"In none of the places of public accommodation, resort, or amusement mentioned in the statute by name is there any such intimate association among the persons admitted as patrons or guests, and I think the specification of these places by name enables us to say with reasonable certainty that a dancing hall or room, which is not named, was not intended to be included under the more general words. It is not necessary to say that a place to come under the general words must in all cases be ejusdem generis of those afterwards specially named; but I do say that to be covered by the general words a place not included in those afterward specially named should be one within the mischief to be remedied. In my opinion, a dancing hall is not such a place; at least, it is not clear that it was so intended, and defendant should not be subjected to a penalty unless the right is clear."

The plaintiff and the amicus curiae noted that the portion of the opinion of the Appellate Division relied upon by the defendant was contained in an opinion of an intermediate appellate court whose holding in the case was reversed by a higher appellate court and that hence it had dubious and questionable standing as an authority. The claim of the defendant on this phase is stated in its brief as follows:

"The success of defendant's operation of the Surf Ballroom as a place where people of both sexes meet and dance to music is dependent on the participation by all of its patrons in the various dances, either with their own partners or with the members of a large group of dancers. In order to encourage and produce such participation the management of the Surf Ballroom provides a dance program which includes not only waltzes, fox-trots, two steps, but also a considerable number of circle and square dances, grand right and left marches, and a new dance called the 'Bunny Hop' performed by a group of patrons. It is essential to the success of such a program that persons of opposite sex freely intermingle with each other and that their personal appearance and dress be such as to make them acceptable as dancing partners to the other persons participating in one of the aforesaid dances. In order to assure such intermingling and dancing partners, the fundamental social policy of the defendant is to admit as patrons of the Surf Ballroom only those persons whose dress and personal appearance make them acceptable as dancing partners and as members of a group of dancers and to deny admittance to anyone whomsoever, regardless of race or color, whose presence and personal appearance might disturb the tranquility of the patrons and prevent their free intermingling and active participation in the various dances in an evening's program of dancing."

By way of résumé, it is noted that it appears from an unbroken line of decisions by courts of last resort that the term "places of amusement" when used by legislatures in statutes has not been segmentized in meaning as between exhibitive and participative amusements either generally or under the rule of ejusdem generis, and that when a legislature uses the term "places of amusement" in a statute it is to be presumed

that such legislature intended to include and did include dance halls within the statute.

■ It was the claim of the defendant that the group and mixer type of dances included in its programs at its dance hall provide a form of amusement which is without the Iowa Civil Rights Act. That contention is apparently based in part upon the premise that the Iowa Legislature at the time it enacted the Act in 1884 and re-enacted it as a part of the Code of 1897 did not envisage dance halls at which the patrons participated in both couple dances and group and mixer dances. That premise would seem to be based upon the assumption that the Iowa Legislature at the time of the enactment and re-enactment of the Act was not familiar with group and mixed type of dances. In the Encyclopedia Americana, 1941 Edition, under the topic "Dancing," on page 449, it is stated that the square dance first appeared in France in 1745 and was known as the quadrille. It is further stated that dancing by couples was an innovation which grew out of the quadrille. It is further stated that group forms of dancing were brought over to the United States in colonial days from England. It would seem that at the time the Iowa Act was enacted and re-enacted group and mixer forms of dancing were as traditional, if not more traditional, than couple dancing. The defendant referred to the matter of "social acceptability" in connection with the matter of exclusion. As heretofore noted, the defendant under its rules denies the privileges of its dance hall to those who are improperly dressed, to those who are lacking in cleanliness, to those under the influence of liquor, and to those who are guilty of misconduct. Those rules as to exclusion are the same as would ordinarily and properly be observed by the establishments and business specifically named in the Act. Exclusion for any of the reasons noted would be "for reasons by law applicable to all persons" and hence not in viola-

tion of the Act. To those grounds or reasons for exclusion the defendant has added exclusion because of color. The manager of the defendant's dance hall testified that the only people who were excluded on a class basis were colored people. Exclusion because of color is manifestly not a "reason applicable to all persons." It would seem that an establishment which has the attributes of a place of public amusement cannot, by adding to the rules generally and properly followed by establishments or business within the Act the rule of exclusion because of color, change its character from a place of public amusement upon the theory of "social acceptability." In the case of Coger v. Northwest Union Packet Co., 1873, 37 Iowa 145, the Iowa Supreme Court discussed the matter of "social relations" in connection with businesses which are essentially public in character. The plaintiff in that case was a colored woman and the defendant was a common carrier by water. The defendant had a rule that colored people who were passengers on its boat would not be served their meals at the tables at which the other passengers were served. The plaintiff who was a passenger on the defendant's boat was denied service at one of such tables and upon her refusal to leave the table was forcibly removed. She brought an action to recover damages for such refusal and removal. The jury returned a verdict in favor of the plaintiff which was affirmed on appeal. The Iowa Supreme Court, in referring to one of the contentions of the defendant, makes some statements which would seem to be apropos to the present case. That Court stated at pages 157, 158 of 37 Iowa:

"It is insisted that the rights claimed by plaintiff, for the deprivation of which she prosecutes this suit, are social, and are not, therefore, secured by the constitution and statutes, either of the State or of the United States. Without doubting that social rights and privileges are not within the protection

of the laws and constitutional provisions in question, we are satisfied that the rights and privileges which were denied plaintiff are not within that class. * * * She was unobjectionable in deportment and character. * * * She complains not because she was deprived of the society of white persons. Certainly no one will claim that the passengers in the cabin of a steamboat are there in the character of members of what is called society. * * * It cannot be doubted that she was excluded from the table and cabin, not because others would have been degraded and she elevated in society, but because of prejudice entertained against her race, growing out of its former condition of servitude—a prejudice, be it proclaimed to the honor of our people, that is fast giving way to nobler sentiments, and, it is hoped, will soon be entombed with its parent, slavery."

The Iowa Act includes within its scope (emphasis added) "*all* other places of amusement." It was the conclusion of this Court that in order to sustain the construction of the Act urged by the defendant it would be necessary to disregard the plain language used by the Iowa Legislature in the Act. Since the plaintiff's action in the present case was based upon an Act of the Iowa Legislature, the construction placed on that Act by the Iowa Supreme Court governs. As heretofore noted, that Court has not as yet directly passed upon the question as to whether or not dance halls of the type and kind operated by the defendant come within the provisions of the Act. Under those circumstances the conclusion reached by this Court was necessarily anticipatory in character. It was and is the view of this Court that when the question is directly presented to the Iowa Supreme Court it will hold that dance halls of the type and kind operated by the defendant are within the provisions of the Act. It was and is the view of this Court that the motion of the defendant for a directed verdict was properly denied.