1. **Civil Rights:** EXCLUSION OF COLORED MAN FROM SKATING-RINK: DAMAGES. Plaintiff, a colored man, sought to recover damages on account of his exclusion from a skating-rink kept and operated by defendants. But, as it does not appear that it was operated under a license or privilege granted by the state, or by the city in which it was conducted, or that it was in any manner regulated or governed by the police regulations of the city, *held* that it must be presumed to have been conducted as a private business merely, and that no person, black or white, had a right to enter against the will of the proprietors. The case of inn-keepers, carriers of passengers and keepers of licensed places of amusement, distinguished. [But see chap. 105, Laws of 1884, since enacted.]

*Appeal from Linn Circuit Court.*

FRIDAY, DECEMBER 11.

IT is alleged in the first count of the petition that defendants were the proprietors of a place of public amusement in the city of Cedar Rapids, known as a skating rink, and that plaintiff, at a time when said rink was open to the public, applied to them for admission thereto, but that they wrongfully, maliciously and insolently, and without any cause except that he is a colored man, refused to admit him to said rink. In the second count it is alleged that, on another occasion, defendants, by a printed circular, which they caused to be circulated in the community, advertised and announced to the public that said rink would, on an evening which was named in the circular, be opened to all persons on the payment of an admission fee, and that at the time named plaintiff went to said rink and offered to pay the fee charged other members of the public for admission, and requested to be admitted thereto, but that defendants wrongfully, maliciously and insolently refused to receive said fee from him, or to permit him to enter the rink; and that their only reason for treating him in this manner was that he is a colored man.

Defendants demurred to the petition on the ground that it did not appear by the averments thereof that plaintiff had any legal right to enter said skating rink on either of the occasions mentioned in the petition. The demurrer was sustained, and plaintiff appeals.

*W. G. Thompson* and *Albert & Albert*, for appellant.

*I. N. Whittam*, for appellee.

REED, J.—The demurrer admits that plaintiff was excluded from the place in question on the sole ground that he is a colored man; and we will assume, in our consideration of the case, that there was nothing in his character or conduct which rendered him offensive or afforded any ground for excluding him. The single question presented by the record is whether the refusal by the defendants on the occasions mentioned in the petition to permit plaintiff to enter their skating rink was a denial to him of a privilege which he had the right, under the law, to enjoy; and, in the outset, we deem it proper to say that the question whether plaintiff had the right to demand admission to the place is in no manner affected by the fact that he is a colored man. His legal right in the premises is not different from that of white men whose character and conduct are not different from his own. And if a white man of unobjectionable character and conduct could have demanded admission as a legal right on the occasions in question, the refusal of defendants to admit him operated as a denial to him of a legal right; for. the law is no respecter of persons, and it guaranties no rights or privileges to one class of citizens which may not be enjoyed by every other class upon the same terms, and under like circumstances. If then the defendants had the right to deny plaintiff admission to their skating rink, this right must be based upon some consideration upon which they might have denied any other man of like character admission to it.

Rowlin v. Lyon et al.

The allegation of the petition is that defendants kept and operated the rink as a place of public amusement, but it is not shown by any averment that the business of operating it is carried on under a license or privilege granted by the state, or the municipal corporation in which it is conducted, or that it is in any manner regulated or governed by any of the police regulations of the city. The reasonable inference from the allegations of the petition is that defendants are the owners of a building in which they permit parties to engage in the exercise of roller skating, for which privilege they charge a consideration, and where exhibitions are sometimes given by experts in the art of skating, on which occasions an admission fee is charged, and that the general public was invited to resort to the place for amusement and recreation. It may be said, as a general rule, that the law does not undertake to govern or regulate the citizen in the conduct of his private business. In all matters of mere private concern he is left free to deal with whom he pleases, and to make such bargains as he is able to make with those with whom he does deal. There are, however, classes of business in the conduct and management of which, notwithstanding they may be conducted by private parties for their own emolument, the general public has such interest as that they are properly the subject of regulation by law, and those engaged in them are subject to restrictions and limitations which do not apply to persons engaged in other kinds of business. Innkeepers and carriers of passengers are of this class. All members of the general public are entitled to demand accommodations from them, and they are bound to afford such accommodations, if they are able to do so. If the innkeeper has room in his house, he is bound to receive and entertain any traveler or wayfaring person who applies for accommodations, and is able and willing to pay a reasonable consideration therefor, and whose character and conduct are unobjectionable; and the carrier is also bound to receive all members of the public who apply for accommodation, and whom he is able to accom-

modate. Story, Bailm., §§ 475, 476. While they have the right, doubtless, to make reasonable and proper rules for the conduct of the business in which they are engaged, they are not permitted to discriminate in favor of or against any class. Nor are they at liberty to refuse accommodations to any whom they are able to accommodate. *Rex v. Ivens*, 7 Car. & P., 213; *Chicago & N. W. Railroad Co. v. Williams*, 55 Ill., 185; *Coger v. Northwestern Union Packet Co.*, 37 Iowa, 145. The ground upon which these restrictions are imposed is that persons engaged in these vocations are in some sense servants of the public, and in conducting their business they exercise a privilege conferred upon them by the public, and they have secured to them by the law certain privileges and rights which are not enjoyed by the members of the public generally.

It may be that the managers of a place of public amusement, who carries on his business under a license granted him by the state, or by a municipal corporation organized under the laws of the state, would be subject to the same restrictions. We incline to think that he would; for, as he carries on the business under an authority conferred by the public, the presumption is that the intention was that whatever of advantage or benefit should result to the public under it should be enjoyed by all its members alike. The power which granted the license represented each member of the public in making the grant, and each member, with reference to those privileges which accrue to the public under it, must be on an equality with every other member. It seems to us, however, that the business conducted by the defendants was not of this character. The public has assumed no control of it, and it does not appear that it is a business in which the public have a concern. Any citizen of the state has the right to establish himself in it at his own election, and no license or authority from the public is required therefor. It seems to us that it is essentially a private business, and that it will remain so until the public assumes some con-

Bowlin v. Lyon et al.

trol of it.   Defendants were using their own property in con-
ducting the business, and were carrying it on according to
their own notions.   When members of the public entered
the building, they did so by permission of defendants, or
under a contract with them.   When they invited the mem-
bers of the public to go to the place, they offered simply to
extend to them permission to enter, or to contract with them
for that permission.   We see no reason why they might not
have limited their invitation to certain individuals or classes.
As the place belonged to them, and was under their exclusive
control, and the business was a private business, it cannot be
said, we think, that any person had the right to demand
admission to it.   They had the right, at any time, to with-
draw the invitation, either as to the general public or as to
particular individuals.

The act complained of by plaintiff was the withdrawal by
defendants as to him of the offers which they had made to
admit him, or to contract with him, for admission.   They
had the right to do this as to him, or any other members of
the public.   This right, as we have seen, is not based upon
the fact that he belongs to a particular race, but arises from
the consideration that neither he, nor any other person, could
demand, as a right under the law, that the privilege of enter-
ing the place be accorded to him.   The legal rights of the
parties would not have been different from what they are if
defendants had excluded plaintiff on account of the cut of his
coat or the color of his hair, instead of the color of his skin;
or if they had excluded him without assigning any reason
for their action in the premises.*

AFFIRMED.

---

*It should be noted that the acts complained of in this case occurred prior
to the taking effect of chap. 105, Law of 1884.