W. M. Humburd v. Mrs. Edward Crawford and Leila Hunter, Appellants.

**Eating houses:** CIVIL RIGHTS STATUTE. One who conducts a place where those who come are received as guests and served with meals without any previous agreement as to the terms or duration of their stay, is operating an eating house within the terms of the civil rights statute (section 5008), and upon refusal to entertain a guest because of color the proprietor is guilty of a misdemeanor.

*Appeal from Polk District Court.—* Hon. A. H. McVey, Judge.

Wednesday, November 15, 1905.

Action for damages occasioned by the refusal to allow plaintiff to eat at the defendant's table. Verdict and judgment for plaintiff, and defendants appeal.— *Affirmed.*

*McHenry & Graham,* for appellants.

*S. Joe Brown,* for appellee.

Ladd, J.— The plaintiff was one of the jurors to whom a civil cause had been submitted at the January, 1904, term of the district court of Polk county. Pending their deliberations, the bailiff in charge arranged with defendants to serve dinner for the jurors, and conducted them to their house. Upon arrival the defendants, as the evidence tended to

show, refused to allow plaintiff to sit at their table solely because of his color, whereupon the other jurors were served, and he was compelled to go elsewhere for food. It is not questioned but that this was in violation of the civil rights statute, if defendants were maintaining an eating house such as therein contemplated. That statute declares that "all persons within this State shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities and privileges of inns, restaurants, chop houses, eating houses, lunch counters and all other places where refreshments are served, public conveyances, barber shops, bath houses, theaters, and all other places of amusement. Any person who shall violate the provisions of this section by denying to any person, except for reasons by law applicable to all persons, the full enjoyment of any of the accommodations, advantages, facilities or privileges enumerated herein, or by aiding or inciting such denial, shall be guilty of a misdemeanor." Code, section 5008.

The evil sought to be remedied was unjust or groundless discrimination between individuals where the public generally are invited to be served or entertained. See *Bowlin v. Lyon,* 67 Iowa, 536. If, then, the object and practice of defendants was to serve meals to whomsoever applied, at prices charged to all, their place was an eating house within the meaning of this statute. If meals were served only in pursuance of previous arrangements, and therefore to particular individuals, rather than to any who might apply, it was a private boarding house only. The distinction was clearly drawn in the fifth paragraph of the court's charge: "If you find from a preponderance of the evidence in this case that the defendants conducted a place where those who came were received as guests and served with meals without any previous agreement as to the duration of their stay or the terms of their entertainment, then you will be authorized to find that the defendants kept a public eating house."

But defendants insist that this was erroneous, in that

the element of publicity was omitted, and in support of their contention cite decisions drawing the distinction between an inn or hotel and a boarding house. Thus in *Lyon v. Smith.* Morris, 184, 186, the court, speaking through Mason, C. J., said in reference to what constitutes an innkeeper: " He should hold himself out to the world as an innkeeper. It is not necessary that he should have a sign or license, provided that he has in any other manner authorized the general understanding that his was a public house, where strangers had a right to require accommodations." In *Fay v. Pacific Imp. Co.,* 93 Cal. 253 (26 Pac. Rep. 1099, 28 Pac. Rep. 943, 16 L. R. A. 188, 27 Am. St. Rep. 198), several definitions of inns are collected, and the distinction mentioned is clearly stated: " The fact that the house is open for the public, that those who patronize it come to it upon the invitation which is extended to the general public, and without previous agreement for accommodation, and without any previous agreement as to the duration of their stay, marks the important distinction between a hotel or inn and a boarding house." Again, the difference is noted in Schouler on Bailments, p. 253: "An inn is a house where a keeper holds himself out as ready to receive all who may choose to resort thither and pay an adequate price for the entertainment; while the keeper of a boarding house reserves the choice of comers and the terms of accommodation, contracting specially with each customer, and most commonly arranging for long periods and a definite abode."

If, then, the distinction between an inn or hotel and a boarding house be accepted as the test to be applied in determining whether a place is an eating house or boarding house as contemplated by this statute, we think it was adopted in this case. Not from advertisements or signs alone was the true character of the establishment to be ascertained, but from the manner of conducting the business as well, and, if meals were served by defendants to whomsoever came, at a uniform price, as the evidence tended to show, this was a sufficient

holding out to the world to constitute it a public eating house.  The instruction was correct.— *Affirmed*.