**Robert ANNEAR, Appellant,**

v.

**STATE of Iowa and Iowa Department of Public Defense, Appellees.**

**No. 86–1829.**

Supreme Court of Iowa.

Feb. 17, 1988.
Rehearing Denied April 8, 1988.

Thomas Mann, Jr., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Scott M. Galenbeck, Asst. Atty. Gen., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER and NEUMAN, JJ.

HARRIS, Justice.

The trial court dismissed this civil rights action upon finding it lacked subject matter jurisdiction. In this appeal challenging that ruling we are not called upon to consider the merits or viability of the claim. Our review is narrowly limited to the challenged ruling, hence we address only whether, as the district court held, the action was barred because review was not sought within 180 days. We reverse and remand because on this record we cannot hold it was barred.

The plaintiff Robert Annear worked as a custodian for the Iowa department of public defense at Camp Dodge from 1972 until February 21, 1981. Annear had back problems which became so aggravated by 1981 that he was no longer able to work. He was awarded permanent disability benefits on June 29, 1981. On that same day the department decided to "separate" Annear from his job due to his disability. Following successful back surgery Annear appeared at Camp Dodge and presented an unsigned release card from his physician and requested reinstatement.

Predictably, there are two versions of the evidence at this point, Annear's and the department's. According to the department Annear was in no way led to believe he would be reinstated to his old position. Rather he was told he would be considered, along with others, for a new position.

Annear's version suggests there were assurances of reinstatement. According to Annear the department told him that further evidence of physical recovery would be needed before he could be considered for "reinstatement" and suggested he obtain a signed release from his physician. The department later wrote Annear to say that a signed physician's release would make him eligible for reinstatement to his former class but would not automatically entitle him to reinstatement.

On December 10, 1981, Annear's physician signed a release, stating he could return to work on January 4, 1982. On that date he attempted to do so but was told the State did not have funds to reinstate him. Annear persisted, returning often to Camp Dodge in his attempt to get his job back. On July 26, 1982, Annear discovered that other persons had been hired in his place. On August 5, 1982, he filed a discrimination complaint with the Iowa civil rights commission, claiming he had been denied reinstatement because of his disability. The commission issued a right-to-sue letter.

On August 5, 1983, Annear filed this action, claiming disability discrimination, contract violation, and wrongful discharge.

I. The trial court dismissed Annear's action based on a finding Annear did not file his complaint with the Iowa civil rights commission within 180 days of the claimed

violation, a condition precedent for such an action under Iowa Code section 601A.15(12). *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571, 576 n. 4 (1977). Annear brought this appeal to challenge the dismissal.

To support the trial court ruling the State contends all claimed discriminatory events occurred before February 5, 1982 (180 days prior to when the complaint was filed). The State claims only four dates are implicated:

June 29, 1981: Annear qualified for long-term disability benefits and was then "separated" from his employment.

November 19, 1981: Annear first requested reinstatement and was refused. The State then requested further medical evidence.

November 25, 1981: The State gave written refusal to reinstate Annear.

January 4, 1982: The State gave second refusal to reinstate.

The State insists the November 25 and January occurrences (both of which occurred before February 5, 1982) amounted to clear rejections of Annear's claim to reinstatement.

Annear believes the discrimination was ongoing and continuous until July 26, 1982, well within the 180–day period. According to Annear he sought reinstatement every week until July 26, when he learned other persons had been hired for his job. He contends each weekly rejection amounted to discrimination because of his disability.

II. Iowa Code chapter 601A is patterned after the federal act. A similar 180–day limitation period is to be found in 42 U.S.C. section 2000e–5(e). Interpretations of the federal act are instructive. *Hubbard v. State,* 163 N.W.2d 904, 909 (Iowa 1969). Under the federal cases there is a basis for Annear's legal theory.

An employee who charges an employer with continuously maintaining an illegal employment practice may file a charge of discrimination until 180 days after the last instance of that practice. *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980); *see also Satz v. ITT*

*Financial Corp.,* 619 F.2d 738, 744 (8th Cir.1980).

Not every act by an employer, not even every act which might precipitate an employee's complaint, will toll the 180–day period. Acts which are considered "discrete" will trigger the running of the 180–day period. *Dumas v. Town of Mount Vernon, Ala.,* 612 F.2d 974, 975 (5th Cir. 1980). The emphasis is not on mere continuity; the critical question is whether any present violation exists. *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578. Failure to promote is viewed as ongoing, while failure to hire is viewed as a discrete act. *Dumas,* 612 F.2d at 977.

Central to the State's position regarding the 180–day limitation is the special nature of a discharge. A severing of the employment relationship ordinarily concludes a discrimination against the severed employee and activates the time period for filing charges with the commission. *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 473 (D.C.Cir.1976). But the principle cannot be summarily applied where, as here, it is disputed whether a discharge has occurred.

Discussing 1972 federal legislation which extended the filing requirement from 90 to 180 days, the eighth circuit court quoted sponsors of the bill:

Existing case law which [h]as determined that certain types of violations are continuing in nature, thereby measuring the running of the required time period from the last occurrence of the discrimination and not from the first occurrence is continued, and other interpretations of the courts maximizing the coverage of the law are not affected. It is intended by expanding the time period for filing charges in this subsection that aggrieved individuals, who frequently are untrained laymen and who are not always aware of the discrimination which is practiced against them, should be given a greater opportunity to prepare their charges and file their complaints and that existent but undiscovered acts of discrimination should not escape the effect of the law through a procedural oversight....

*Satz,* 619 F.2d at 744 (quoting 118 Cong. Rec. 7167 (1972)).

Thus, when considering whether the "continuing violation" theory applies:

the courts are not really concerned with continuity as much as they are with assessing the employment situation from the layperson's viewpoint. The focus is on what event, in fairness and logic, should have alerted the average layperson to act to protect his rights, or when he should have perceived that discrimination was occurring.

*Dumas,* 612 F.2d at 977 (quoting *Elliott v. Sperry Rand Corp.,* 79 F.R.D. 580, 585 (D.Minn.1978)). We construe the procedural requirements of Iowa Code section 601A.15(12) liberally in view of its beneficial purposes in exposing unlawful discrimination. *See Smith v. American President Lines, Inc.,* 571 F.2d 102, 105 (2d Cir.1978).

■ We hold that Annear can urge the "continuing violation" theory for claimed violations of Iowa Code section 601A.6(1)(a). The question then becomes when would Annear, as an average layman, perceive that discrimination was occurring. The 180-day period runs from that date. But this question was not considered by the district court. And, because the matter arose on disputed facts incident to a summary judgment motion, there was no way to answer it.

Annear was denied the right to present his version of what occurred. The grant of summary judgment must be reversed and the case remanded for further proceedings.

III. Annear also assigns error in the trial court's refusal to grant his own motion for summary judgment against the State. He contends the evidence indicating discrimination against him was uncontroverted and he was therefore entitled to judgment as a matter of law. *See* Iowa R.Civ.P. 237(c). Without suggesting there is any merit in the assignment we note the issue was not addressed by the trial court. No motion under Iowa rule of civil procedure 179(b) was filed. Hence the question was not preserved for review. *State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W. 2d 202, 206–07 (Iowa 1984).

■ In Annear's resistance to the State's motion to dismiss and strike he stated he was entitled to recover on a theory of wrongful discharge in violation of public policy. We think this theory was not sufficiently suggested in Annear's petition. *See Shill v. Careage Corp.,* 353 N.W.2d 416, 420–21 (Iowa 1984) (theories will not be reviewed which were not presented to and considered by the trial court).

The judgment of the trial court is reversed and the case is remanded for further proceedings. Annear may present an attempt to establish a factual basis for his continuing violation theory. The 180-day limitation period is to run only from the date on which he, as an average layperson, should have perceived that discrimination was occurring. Annear's other assignments are, for the reasons indicated, without merit.

Tax costs twenty-five percent to Annear and seventy-five percent to the State.

REVERSED AND REMANDED.