Daylis L. **SMITH**, Appellant,

v.

**ADM FEED CORPORATION**, Appellee.

No. 89–519.

Supreme Court of Iowa.

May 23, 1990.

---

R. Ronald Pogge of Hopkins & Huebner, P.C., Des Moines, for appellant.

Diane M. Stahle and Gene R. La Suer of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for appellee.

SCHULTZ, Justice.

Plaintiff Daylis Smith appeals a judgment in favor of his past employer, ADM Feed Corporation (ADM), in a disability discrimination claim filed under the Iowa Civil Rights Act, Iowa Code chapter 601A (1987). We affirm.

Plaintiff began working as a truck driver for a feed mill in Baxter, Iowa, in 1969. In

1973 defendant ADM purchased the mill and retained plaintiff as a truck driver. Plaintiff primarily drove a hopper-bottom grain truck, one of three trucks then used by ADM in its farm feed business. He was responsible for driving the truck and for loading and unloading sacks of grain. This truck's design made it possible for the driver to load and unload without any heavy lifting or stooping. He was also occasionally needed to drive one of the other trucks owned by defendant. In addition, when he was not driving a truck, he helped out in the feed mill and in the warehouse.

In January 1986 plaintiff had back surgery to fuse two of his lumbar vertebrae, a procedure necessitated by an April 1984 work injury which had damaged his lower back. He was given a final release to return to his employment at ADM by his doctor in January 1987. In the release the doctor noted that plaintiff had been driving a truck since his surgery and stated: "As long as [plaintiff] does work that does not entail heavy lifting with his back or repetitive bending or stooping, then he could return to work." Had this letter been interpreted by ADM as a complete or full medical release, plaintiff would have had enough seniority to return to his previous position. Defendant believed, however, that plaintiff did not have a release to do the type of work he had been doing before his surgery and notified him that it would be unable to rehire him.

In January 1988 plaintiff received an administrative release from the Iowa Civil Rights Commission (commission), issued pursuant to Iowa Code section 601A.16(2), and subsequently filed a petition at law against ADM. He alleged that defendant refused to reemploy him because of his disability and refused to reasonably alter the job to accommodate that disability in violation of Iowa Code section 601A.6(1)(a). Defendant's motion to strike plaintiff's demand for a jury trial was sustained.

Following a bench trial, the court dismissed the action, holding that defendant had established a legitimate business reason to terminate plaintiff and could not have reasonably accommodated his disability without incurring more than a *de minimus* cost. On appeal plaintiff contends: (1) He was entitled to a jury trial on his civil rights claim; (2) if he was not entitled to a jury trial, then the court's review of this "equity" proceeding should be de novo; (3) the court should have found that he spent at least eighty percent of his time driving the hopper-bottom grain truck; (4) the court should not have considered changes in the work environment made subsequent to his failure to be rehired; and (5) defendant could have reasonably accommodated his disability.

I. *Right to a jury trial.* Plaintiff urges that we find that there is a right to a jury trial for causes of action which arise under Iowa Code chapter 601A. He claims that the legislature intended to provide a jury trial for civil rights cases tried in the district court and that to prohibit a jury trial is a violation of article I, section 9 of the Iowa Constitution. If we find there is no statutory right to a jury trial, plaintiff can prevail only if he can prove that a jury trial on a civil rights claim is mandated by the Iowa or the United States Constitutions.

■ A. *Statutory Right.* The question of whether there is a right to a jury trial is an issue of first impression for our court.[1] The United States District Court for the Northern District of Iowa, sitting in diversity, has judicially estimated, by looking at both Iowa case law and relevant federal decisions, that we would conclude there is no right to a jury trial in a chapter 601A claim. *Gray v. Nash Finch Co.,* 701 F.Supp. 704, 707, 709 (N.D.Iowa 1988). While we provide the ultimate interpretation of Iowa law, we agree with the district court's conclusion.

Defendant correctly asserts that the language of chapter 601A is silent on the issue of whether there is a right to a jury trial. We believe that the purpose of the chapter

---

**1.** We acknowledge that we have decided appeals arising from chapter 601A which tried in equity or at law with juries. Either error was not preserved or the issue of the right to a jury was not raised in those cases.

is inconsistent with an intent to provide a jury trial, however. It is the stated legislative purpose of chapter 601A, however, that "every complaint be at least preliminarily screened during the first one hundred twenty days." Iowa Code § 601A.16(6). A district court has no jurisdiction over a plaintiff in a civil rights action unless he first exhausts his administrative remedies. *See* Iowa Code § 601A.16; *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985). The option of seeking relief in the district court following a screening by the commission was added to relieve the backlog of cases before the commission. *See* Note, *Implications of the Right-to-Sue Amendment to Iowa's Civil Rights Law*, 65 Iowa L.Rev. 720, 725–36 (1980). The district court sits as the commission and is empowered to grant only that relief authorized by section 601A.15. *See* Iowa Code § 601A.16(5).

A claimant has no right to a jury trial in an administrative proceeding "where jury trials would be incompatible with the whole concept of administrative adjudication." *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260, 266 (1974) (citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937)). Permitting a jury trial in district court would substantially interfere with a statutory scheme which delegates to the court only that limited power held by the commission. Not only would the procedure change radically, but we believe that a greater emphasis would be placed on a money recovery over other available relief. We conclude that if the legislature intended to provide a different procedure when a case was removed from an administrative hearing it would have done so.

When faced with the same question of whether jury trials are permitted under a civil rights statute with language also creating an option to proceed before the commission or in district court, the New Jersey Supreme Court stated:

A jury trial with its attendant delays and the inherent limitations of the scope of jury verdicts could be counterproductive in terms of fulfilling the explicit legislative goal ... that was to reduce the agency backlog congestion and at the same time provide a judicial alternative that would be comparable to the administrative action so that the society's war against discrimination would not slacken.

... It is reasonable to believe that if the Legislature intended to confer the right to a jury trial when ... it authorized a complainant to bring an action in Superior Court, it would have expressly so provided....

*Shaner v. Horizon Bancorp.*, 116 N.J. 433, 442–43, 561 A.2d 1130, 1135 (1989); *see also Murphy v. Cartex Corp.*, 377 Pa.Super. 181, 194, 546 A.2d 1217, 1223 (1988) (no right to jury trial found in statute where no specific language or legislative history indicates intent to provide for materially different proceeding in court than before agency). We therefore conclude that the legislature did not intend for civil rights claimants to have a statutory right to a jury trial in district court under chapter 601A.

This is in contradistinction to civil damage actions brought pursuant to a violation of our old civil rights statute, Iowa Code section 5008, which made it a misdemeanor to deny any person the full and equal enjoyment of certain public accommodations. These suits were tort actions for damages caused by the violation of a penal statute and as such were considered actions at law triable to juries. *See Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 423 (Iowa 1977); *Brown v. J.H. Bell Co.*, 146 Iowa 89, 123 N.W. 231 (1910); *Humburd v. Crawford*, 128 Iowa 743, 105 N.W. 330 (1905).

We do not agree with the dissent's observation that the ruling would come as a surprise to the legislature. On the contrary, a different result would be a greater surprise. In enacting section 601A.15(8) the legislature gave the court power to provide a wide variety of relief, most of which is equitable in nature. There is no indication in chapter 601A that a claim for money damages is to be treated as an ordinary civil action. Neither do we agree that inaction on the part of the legislature since the enactment of section 601A.16 indicates its tacit approval of jury trials. We have had both jury and equitable appeals

since its enactment and suggest that the inaction perhaps indicates nothing more than apathy.

■ B. *Constitutional Right.*[2] The plaintiff claims that prohibiting a jury trial in district court violates article 1, section 9 of the Iowa Constitution. This provision of our Bill of Rights provides that "[t]he right of trial by jury shall remain inviolate." However, the right to a jury trial is not a fundamental right in proceedings created by statute. *State ex rel. Bishop v. Travis,* 306 N.W.2d 733, 734 (Iowa 1981). We look to the common law and not to present statutes to determine when the constitutional right to a jury applies. *Iowa Nat'l Mut. Ins. Co. v. Mitchell,* 305 N.W.2d 724, 726–28 (Iowa 1981). The right to a jury trial that is preserved by the constitution is the right that existed at common law. *Id.* at 728. The common law distinguishes between cases at law where juries were allowed and cases tried in equity without a jury. *Id.* at 727. We have determined that there is no right to trial by jury in special proceedings under our constitution. *See, e.g., State ex rel. Rake v. Ohden,* 346 N.W.2d 826, 829 (Iowa 1984); *Bishop,* 306 N.W.2d at 736; *Greenstreet v. Clark,* 239 N.W.2d 143, 148 (Iowa 1976). Guided by these principles we analyze whether claims under section 601A.15 trigger the constitutional right to a jury trial.

■ We have stated that since chapter 601A is patterned after Title VII of the Civil Rights Act of 1964 (Equal Employment Opportunities Act), codified at 42 U.S.C. section 2000e et seq., "[i]nterpretations of the federal act are instructive" in our analysis of the Iowa law. *Annear v. State,* 419 N.W.2d 377, 379 (Iowa 1988); *accord Foods, Inc. v. Iowa Civil Rights Comm'n,* 318 N.W.2d 162, 172 (Iowa 1982). Title VII provides for any equitable relief that the court deems appropriate for victims of intentional, unlawful employment practices. *See* 42 U.S.C. § 2000e–5(g). The Eighth Circuit Court of Appeals has held that there is neither a statutory nor constitutional right to a jury trial in Title VII actions. *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1209 n. 3 (8th Cir.1985) (citing *Harmon v. May Broadcasting Co.,* 583 F.2d 410, 410 (8th Cir.1978)), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). The Supreme Court has not ruled on this question. *Lytle v. Household Mfg., Inc.,* —— U.S. —— n. 1, 110 S.Ct. 1331 n. 1, 108 L.Ed.2d 504 (1990).

Plaintiff alleges that the district court's and our prior reliance on Title VII cases is misplaced. He asserts that a comparison of chapter 601A with Title VIII of the Civil Rights Act of 1964 (Fair Housing Act), codified at 42 U.S.C. section 3601 et seq., is more appropriate. The relevant enforcement provision of Title VIII, now codified at section 3613(c) (1988), provides that the court may award "actual and punitive damages" and "any permanent or temporary injunction, temporary restraining order, or other order" it deems appropriate. Section 601A.15(8)(a)(8) permits:

> Payment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages, court costs and reasonable attorney fees.

Plaintiff asserts this empowers the court to fashion relief more similar to that allowed under Title VIII than Title VII. We disagree.

Plaintiff points to the language of section 601A.15(8)(a)(8) which permits the award of actual damages and asserts that the Supreme Court has held that "actual and punitive damages is the traditional form of relief offered in the courts of law." *See Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009, 39 L.Ed.2d at 267. However, in that Title VIII claim, the Court noted the difference between Title VIII's "simple authorization of an action for actual and punitive damages" and Title VII's equitable remedies. *Id.* at 197, 94 S.Ct. at 1009–10, 39 L.Ed.2d at 268. Similar to Title VII, section 601A.15(8) contains a long list of available equitable remedies.

2. Other litigants in pending appeals presenting the same issue have requested that we consider their briefs. Although we do not intend to answer each and every point discussed, we have carefully considered all matters raised by this issue.

Section 601A.15(8) orders the commission, following a finding of a discriminatory practice, to "issue an order requiring the respondent to cease and desist from [that] practice and to take the necessary remedial action as in the judgment of the commission will carry out the purposes of this chapter." Sections 601A.15(8)(a)(1)–(8) provide a nonexclusive list of what the legislature considers to be remedial action. These include such equitable remedies as reinstatement, hiring, and admission to training programs. Section 601A.15(8)(b) provides the commission with the power to issue cease and desist orders and take affirmative action against respondents operating with state licenses or performing contracts with the state or political subdivisions.

The remedies available under this section are similar to the equitable remedies recognized by the federal courts in Title VII actions. *See, e.g., Harmon,* 583 F.2d at 411; *Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir.1975); *EEOC v. Detroit Edison Co.,* 515 F.2d 301, 308–09 (6th Cir.1975); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 802 (4th Cir.1971); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir.1969); *Culpepper v. Reynolds Metals Co.,* 296 F.Supp. 1232, 1239 (N.D.Ga.1969) *rev'd on other grounds,* 421 F.2d 888 (5th Cir.1970).

Unlike Title VIII, chapter 601A does not permit an administrative agency, or the district court under section 601A.16(5), to award punitive damages. *Chauffeurs, Teamsters and Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375, 384 (Iowa 1986). In *Chauffeurs,* we noted the general rule that an agency cannot award punitive damages absent express statutory language and concluded that the language "but not limited to actual damages" in section 601A.15(8)(a)(8) does not necessarily imply that punitive damages are available. *Id.* (citing *High v. Sperry Corp.,* 581 F.Supp. 1246, 1247 (S.D.Iowa 1984)); *accord EEOC,* 515 F.2d at 308–09.

The Court in *Curtis* also noted that the decision to award certain equitable relief in Title VII cases is committed to the discretion of the trial judge and is in contrast to a plaintiff's entitlement to actual damages should he prove unlawful discrimination in a Title VIII action. *Id.* 415 U.S. at 197, 94 S.Ct. at 1009–10, 39 L.Ed.2d at 268. We have viewed the award of actual damages, such as those for emotional distress, as being consistent with the commission's discretion in fashioning an appropriate remedy under section 601A.15(8). *See Chauffeurs,* 394 N.W.2d at 383; *Foods,* 318 N.W.2d at 171; *accord Gray,* 701 F.Supp. at 708. Thus the plaintiff's claim for damages in this case, made pursuant to section 601A.15(8), is discretionary and not a matter of right.

Relying heavily upon *Curtis,* plaintiff urges that the relief requested plus the remedy of damages provided by the legislature require that he be allowed a jury trial. It is true that the Supreme Court's decision in *Curtis* concentrated on the relief sought. We believe that it is appropriate to look at the essential nature of the cause of action, however, rather than solely at the remedy, to determine the right to a jury under our constitution.

In analyzing the constitutional right to a jury in light of similar statutory provisions, the New Jersey court stated:

> We consider the nature of the underlying controversy as well as the remedial relief sought in determining whether the cause of action has been historically primarily equitable or legal in nature.

*Shaner,* 116 N.J. at 450–51, 561 A.2d at 1139. In *Greenstreet,* 239 N.W.2d at 147–48, we determined that a jury was not constitutionally required in a paternity proceeding under Iowa Code Chapter 252A (Uniform Support of Dependents Law), because it was a special proceeding with equitable issues. We looked to the nature of the action as encompassed by the entire statutory scheme and concluded that the common law afforded no effective remedy similar to the one provided by statute. *Id.* at 147; *see also Bishop,* 306 N.W.2d at 735–36 (to determine whether right to jury trial was violated, we examined procedural and substantive provisions of two sections

of Iowa Code addressing family support obligations); *Iowa Nat'l*, 305 N.W.2d at 727–28 (we examined statute to determine whether jury trials were historically required in small claims actions under common law). Consequently, we will look to the nature of the claim to determine whether the civil rights action has distinctive substantive and procedural standards not present in actions where a jury was required under the common law.

As noted previously, chapter 601A remedies and procedures provide a wide range of latitude to the court. As applied to employees, it provides distinctive procedures and remedies not present in the common law tort of wrongful discharge or in breach of contract actions. We conclude that the legislature in enacting this chapter provided a new special proceeding, equitable in nature, that was unknown at common law. For this reason we hold that no jury is required under our constitution.

Other jurisdictions have arrived at the same conclusion. *See Smith v. Milliken & Co.*, 189 Ga.App. 897, 377 S.E.2d 916, 918 (1989); *Shaner*, 116 N.J. at 456–57, 561 A.2d at 1141; *South v. Toledo Edison Co.*, 32 Ohio App.3d 24, 513 N.E.2d 800, 803 (1986); *Murphy v. Cartex Corp.*, 377 Pa. Super. at 195, 546 A.2d at 1224; *but see Schafke v. Chrysler Corp.*, 147 Mich.App. 751, 753, 383 N.W.2d 141, 143 (1985). We believe that the reasoning in those jurisdictions denying the right to a jury under their state constitutions is sound.

■ II. *Scope of Review.* Plaintiff claims that if his claim was properly tried without a jury, then it was tried in equity and our review on appeal should be de novo. This case was not tried in equity; the court ruled on objections, a practice ordinarily not followed in cases heard in equity. *See Conkling v. Conkling*, 185 N.W.2d 777, 782 (Iowa 1971).

We hold that this case was properly tried as a law action. As we indicated in the previous division, we believe that an action tried under section 601A.16 is a special proceeding. While much of the relief provided in section 601A.15(8) is equitable in nature, the legislature did not label the

proceeding as equitable. Consequently, we must look elsewhere to determine whether the action is ordinary or equitable.

We believe that the legislative definition of forms of actions in Iowa Code chapter 611 (1987) provides us that answer. The legislative remedy provided in chapter 601A for civil rights violations was unknown at common law. Thus, claims filed pursuant to chapter 601A do not fall within the ambit of section 611.4 which allows the prosecution of an equitable proceeding "where courts of equity, before the adoption of this Code, had jurisdiction." Iowa Code § 611.4. Rather, such claims fall within the definition of an ordinary action: "In all other cases, unless otherwise provided, the plaintiff must prosecute an action by ordinary proceedings." Iowa Code § 611.6.

Additionally, our case law has also indicated that special proceedings are reviewable at law rather than de novo. *Lawrence v. Thomas*, 84 Iowa 362, 363–64, 51 N.W. 11, 11–12 (1892); *see Santee v. Uhlenhopp*, 184 Iowa 1131, 1133, 169 N.W. 321, 321 (1918); *Union Bldg. & Sav. Assoc. v. Soderquist*, 115 Iowa 695, 699, 87 N.W. 433, 435 (1901). We also note that the Ohio court in *South* conducted a review at law of an age discrimination proceeding rather than a de novo examination. 513 N.E.2d at 805.

We hold that our review on appeal is at law. We are therefore bound by the trial court's findings of fact if they are supported by substantial evidence. Iowa R.App.P. 14(f)(1).

■ III. *Findings of Fact.* Plaintiff challenges two findings of fact made by the trial court. While we address these contentions, we believe that these factual determinations, even if incorrect, are immaterial in light of the court's holding.

Plaintiff first alleges that the court erred in concluding that only half of his time was spent driving the hopper-bottom truck. Both plaintiff and the assistant plant manager agreed that plaintiff spent about eighty percent of his time driving a truck and the remaining twenty percent working

in the mill. Plaintiff also stated that he drove the flat-bottom truck three or four times a month. This concurs with the manager's conclusion that plaintiff probably spent sixty percent of his time driving the hopper-bottom truck and the other forty percent driving the other truck or working in the mill. While the manager conceded that these percentages were "guesstimates," they appear to be reasonable in light of plaintiff's own statements and those of another other truck driver. This truck driver testified that when he was performing plaintiff's job, he drove the hopper-bottom truck about seventy to seventy-five percent of the time. The record indicates that plaintiff's job entailed driving the hopper-bottom truck between sixty and seventy-five percent of the time. There is therefore substantial evidence to support the trial court's conclusion that plaintiff spent sixty percent of his time driving the truck which did not require any heavy lifting to load or unload.

Plaintiff also claims that the trial court erroneously considered the fact that defendant stopped using the hopper-bottom truck in its operation six months after the decision was made not to rehire him. While the trial court did note in its conclusions of law that the work plaintiff could do would be substantially reduced with the discontinued use of the hopper-bottom truck, it did not rely upon this fact in its ultimate conclusion that defendant would incur more than a *de minimus* cost if it rehired plaintiff. The court stated:

> In this case, to accommodate Smith, ADM would be required to hire another employee to travel with Smith when driving the flat-bottom truck, which could occupy as much as 40% of his time, *even if they still operated the hopper-bottom truck.* Plaintiff's working in the mill would require substantial change in business operations. At present, employees rotate jobs in the mill to relieve the monotony of the work and reduce the risk of injury. Any accommodation would impinge on the rights of other employees. Further, *if Smith were unable to work in the mill for 20% of his time,* the employer may be forced to hire other part-time persons or incur overtime expense. The cost of extra persons would be more than a *de minimus* cost to the employer. No such accommodation could be made based upon the operations of the facility.

(Emphasis added.)

It is clear that even if the court had concluded that plaintiff drove the hopper-bottom truck eighty percent of his time at work, as he claims, the court still would have concluded that defendant could not have reasonably accommodated his disability.

■ IV. *Reasonable accommodation.* Plaintiff claims that the defendant could have reasonably accommodated his physical disability and retained him as an employee. Plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *See e.g., Frank v. American Freight Sys., Inc.,* 398 N.W.2d 797, 800 (Iowa 1987); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601–03 (Iowa 1983); *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'r,* 322 N.W.2d 293, 296 (Iowa 1982). The court correctly found that plaintiff has made out a prima facie case of discrimination based on his disability. Once this has been established, defendant may rebut the allegation with evidence of a "legitimate, non-discriminatory reason" for the challenged actions. *Frank,* 398 N.W.2d at 800; *King,* 334 N.W.2d at 601–03; *Fairgrounds,* 322 N.W.2d at 293.

In disability cases an employer may rebut this evidence under the "nature of the occupation" exception outlined in Iowa Code section 601A.6(1)(a) ("It shall be an unfair or discriminatory practice ... to discriminate in employment ... because of disability ... unless based upon the nature of the occupation."). *See Frank,* 398 N.W.2d at 801. In such cases "individualized consideration must be given to ... [t]he nature and extent of a disability, the needs of a particular job and the impact of disability on a person's ability to perform that job." *Id.* In light of the evidence in the record regarding the variety of duties

which the truck drivers were required to perform in this small business and plaintiff's physical restrictions, the trial court was correct in holding that defendant established its nature of the occupation defense.

■ Despite defendant's successful rebuttal of plaintiff's case, it is still required to reasonably accommodate his disability, unless it would be an undue hardship to do so. *Frank*, 398 N.W.2d at 802; *Foods*, 318 N.W.2d at 168; 240 Iowa Admin.Code §§ 6.2(6), 6.3 (1987) (now codified at 161 Iowa Admin.Code §§ 8.27(6)(c), 8.28 (1988)). We believe that there is substantial evidence to support the trial court's conclusion that no reasonable accommodation could be made. In a factually similar disability discrimination case, we held that an "accommodation must be made by an employer only if it does not substantially impinge on the rights of other employees or incur more than a *de minimus* cost to the employer." *Frank*, 398 N.W.2d at 803. In *Frank* we concluded that the employer could not reasonably accommodate a truck driver with a back injury who *might* not be able to load or unload the trucks at some time in the *future*. *Id.* We noted that his disability would certainly slow the loading and unloading process and would require the employer to hire outside employees to do that work. *Id.*

The cost to the employer and the other ADM employees is less attenuated in plaintiff's case. His doctor has testified that he cannot *now* do any heavy lifting, repetitive bending or stooping. Whether plaintiff spent sixty or seventy-five percent of his time driving the hopper-bottom truck is irrelevant in light of the fact that his job still required him to spend at least twenty percent of his time driving the other trucks or helping out in the mill or warehouse. His disability would prevent him from performing those tasks, and the burden of covering for him would fall on the other employees or force defendant to hire a part-time worker. We agree with the trial court that this would be more than a *de minimis* cost to defendant.

V. *Summary.* We conclude that the trial court did not err in striking plaintiff's demand for a jury trial and in holding that defendant could not reasonably accommodate defendant's disability at their facility.

AFFIRMED.

CARTER, Justice (dissenting).

I dissent.

The majority concludes that jury trials are not available in chapter 601A civil rights actions brought in the district court pursuant to a "release to sue." The arguments which the opinion advances in support of that conclusion are not persuasive and fly in the face of the general legislative classification of civil actions and the consequences which attend that classification. This supposed exercise in statutory interpretation is really a case of the majority expressing why it would not have permitted jury trials had it been the legislature.

Actions in the district court are classified by Iowa Code section 611.2 (1989) as being of two types: civil and special. That statute provides:

A civil action is a proceeding in a court of justice in which one party, known as the plaintiff, demands against another party, known as the defendant, the enforcement or protection of a private right, or the prevention or redress of a private wrong. It may also be brought for the recovery of a penalty or forfeiture.

Every other proceeding in a civil case is a special action.

*Id.* The language of Iowa Code section 601A.16(2) (1989) simply provides:

Upon a request by the complainant, and after the expiration of one hundred twenty days from the timely filing of a complaint with the commission, the commission shall issue to the complainant a release stating that *the complainant has a right to commence an action in the district court.*

*Id.* (emphasis added). I submit that the "action in the district court" which is authorized by the preceding statute is an ordinary civil action. A plaintiff in such an

action demands relief against another party known as the defendant.

The only statutory classification of ordinary civil actions is that contained in Iowa Code section 611.3 (1989) which provides that there are only two kinds: ordinary (or law actions) and equitable actions. Under the statutory scheme which antedated our rules of civil procedure, jury trials were mandated in all ordinary actions unless waived. *See Missildine v. Brightman*, 234 Iowa 1339, 1344, 14 N.W.2d 700, 704 (1944); *LaForge v. Cooter*, 220 Iowa 1258, 1260, 264 N.W. 268, 269 (1935). The last statute to so provide was Iowa Code section 11429 (1939), which provided:

> Issues of fact in an ordinary action *must* be tried by jury, unless the same is waived.

(Emphasis added.) This statute was superseded by Iowa Rule of Civil Procedure 177 adopted in 1943. *See* Iowa R.Civ.P. 1(d) (1943) and Appendix I annexed thereto. The only change in the former procedure which resulted from the adoption of rule 177 was that now jury trials are mandated in all ordinary actions where trial by jury is demanded. Whether an action is an equitable action or an ordinary action has traditionally been determined by the relief demanded by the plaintiff. The plaintiff in the present case seeks only to recover money damages.

Although the practice just described probably received its impetus from the provisions of article I, section 9 of the Iowa Constitution concerning the right of jury trial, the criteria for determining that right developed by case decisions which paralleled the statutory law of juries antedating our rules of civil procedure and continued with the force and effect of statute under those rules. Consequently, these criteria have taken on legislative as well as constitutional significance. A departure therefrom should therefore require some express legislative directive. No such directive is to be found in that legislation which recognizes a right to bring a civil action after obtaining a release from the civil rights commission.

It should not come as a great surprise to the legislature that actions seeking traditionally legal relief for civil rights violations are triable to a jury under established procedures. Jury trials were available in civil rights actions brought under our earlier statutory law. *See Brown v. The J.H. Bell Co.*, 146 Iowa 89, 123 N.W. 231 (1910); *Humburd v. Crawford*, 128 Iowa 743, 105 N.W. 330 (1905). Moreover, courts in other jurisdictions have concluded there is a right to jury trial in civil rights actions where traditionally legal relief is demanded. *See Reiner v. New Jersey*, 732 F.Supp. 530 (D.N.J.1990) (seventh amendment right to jury in state civil rights action in federal court); *Stewart v. Yellow Freight Sys., Inc.*, 702 F.Supp. 230 (E.D.Mo.1988) (same); *McMillan v. Lincoln Fed. Sav. & Loan Ass'n*, 678 F.Supp. 89 (D.N.J.1988) (same); *Green v. American Broadcasting Co.*, 647 F.Supp. 1359 (D.D.C.1986) (right to jury trial under D.C. act and seventh amendment); *Loomis Elec. Protection, Inc. v. Schaefer*, 549 P.2d 1341 (Ala.1976) (right to jury under state constitution); *Broward County v. La Rosa*, 505 So.2d 422 (Fla. 1987) (same); *King v. General Motors Corp.*, 136 Mich.App. 301, 356 N.W.2d 626 (1984) (same); *Murphy v. American Home Prods. Corp.*, 136 A.D.2d 229, 527 N.Y.S.2d 1 (1988) (right to jury under rule declaring and enlarging state constitutional right); *Perilli v. Board of Educ. Monongalia County*, 387 S.E.2d 315 (W.Va.1989) (right to jury under state constitution).

The majority seeks to avoid the path over which our established procedures travel by characterizing jury trials as "incompatible with the whole concept of administrative adjudication." In support of this claim, it states that the district court sits as the administrative agency. This is clearly not correct. The district court does *not* sit as a civil rights commission; it does not screen cases as does the commission; it does not investigate cases like the commission; nor does a court hear cases under the commission's rules. When the legislature sought to provide a partial answer to the backlog of undisposed claims before the civil rights commission, it did so by providing an *alter-*

*native* to the administrative proceeding in the form of an ordinary civil action.

The analogy to Title VII actions which the majority employs is not persuasive. Title VII of the federal act, by its terms, contemplates *only* equitable relief. A better analogy is found under Title VIII of the federal act. The United States Supreme Court has recognized that an action under Title VIII is one to enforce a "legal right." In *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the Court stated:

> Whatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.
>
>  . . . .
>
> We think it is clear that a damage action under [Title VIII] is an action to enforce "legal rights" within the meaning of our Seventh Amendment decisions. A damage action under the statute sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law. More important, the relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law.

*Id.* at 194–96, 94 S.Ct. at 1008–09, 39 L.Ed.2d at 266–67 (citations omitted) (footnotes omitted).

In an effort to avoid the result which is dictated by the nature of the relief demanded in the present case, the majority mischaracterizes "the essential nature" of this plaintiff's suit. As the path of time leads us farther away from the common law which existed in 1857, when the Iowa Constitution was ratified, we must be careful not to limit the right to a jury trial in statutorily based actions to those instances where these statutes merely codify 1857 common law. We should instead continue to apply the general statutory classification of ordinary and equitable actions based on the nature of the relief available under the newly created causes of action. Judged by this standard, the nature of the injury and the relief sought in the present case would have merited a jury trial in 1857.

The majority also draws some inaccurate conclusions concerning the effect of its decision on the administration of civil rights cases. It states that a jury trial with its attendant delays would be counterproductive in fulfilling the explicit legislative goal. If this is true, the fault lies in the fact that the commission does not have the capacity to fulfill the legislature's goal. Consequently, the legislature has seen fit to provide an alternative. The fact that such an alternative has become necessary is the circumstance which frustrates the original legislative goal. This has very little to do, however, with the procedure which should be employed in the civil actions which have been made available as an alternative to administrative adjudication. I submit that, ideally, administrative agencies should function in the manner of administrative agencies, and courts should function in the manner of courts.

The majority opinion overlooks the fact that, in many types of civil rights cases, and in employment-related cases in particular, a civil rights claim will be only one theory of recovery in a multifaceted claim for relief. In cases where the civil rights claim is brought before the commission and remains for commission consideration, the claimant must necessarily piecemeal the multifaceted assault. Where there has been a release to sue, however, there is a tremendous advantage for purposes of judicial administration in permitting all counts of the multifaceted claim to be joined in a single action and tried under a common procedure be it court trial or jury trial. An example of a case in which that procedure worked expeditiously is *Annear v. State*, 454 N.W.2d 869 (Iowa 1990), filed April 18, 1990.

As a final note, I would point out the obvious fact that, since the enactment of the section 601A.16(2) right-to-sue clause, there have in fact been actions brought pursuant thereto in which jury trials have been permitted. More than one of these cases has reached this court with the right-to-jury issue never being litigated. The first such case was *Ayala v. Center Line, Inc.*, 415 N.W.2d 603 (Iowa 1987), filed November 25, 1987. The most recent civil rights jury case to reach this court on appeal was *Annear*. Between the filing of *Ayala* and the filing of *Annear*, the Seventy–Second General Assembly (second session) and the Seventy–Third General Assembly (first and second sessions) have convened and adjourned without noting any displeasure with the jury trial procedure.

I am confident that the legislature closely monitors the field of civil rights litigation in order to determine whether its goals and expectations are being realized. Given this circumstance, I can only conclude that the legislature has been aware that courts have been permitting jury trials in this type of litigation. The fact that it has taken no action to disapprove the jury trial procedure is a strong indication that the procedure is not contrary to that which the legislature intended.

I would hold that the district court erred in not granting plaintiff's request for jury trial, and would reverse the judgment on that ground.

LAVORATO, NEUMAN, and ANDREASEN, JJ., join this dissent.