**David RAMIREZ, Appellant,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION,
Appellee.**

No. 94–2129.

Court of Appeals of Iowa.

Feb. 28, 1996.

Bruce L. Braley, of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, and H. Daniel Holm, Jr., of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Mark Hunacek and Julie Burger, Assistant Attorneys General, for appellee.

Heard by HAYDEN, P.J., and HABHAB and HUITINK, JJ.

HUITINK, Judge.

David Ramirez appeals the district court's adverse judgment dismissing his employment discrimination suit against the Iowa Department of Transportation (DOT).

Ramirez is Hispanic. He was at all times material to this action employed by the DOT as an engineering aid in Waterloo. Ramirez was first hired on an emergency basis in 1984. He was permanently hired as an Engineering Aid 1 in August of 1985. In November of 1985 Ramirez was promoted to

Engineering Aid 2. Although Ramirez retained his status as an Engineering Aid 2, he was assigned survey duties usually performed by a Construction Technician 1. This survey assignment was temporary, and Ramirez received extraordinary pay.

In 1988 there were two Construction Technician 1 vacancies at the DOT's Waterloo facility. Ramirez applied for both, and he, along with two white male coworkers, were named the three finalists for the two positions. The vacancies were filled by the other two applicants, and Ramirez was not promoted.

The DOT is an Equal Opportunity Employer with an extensive affirmative action policy. The DOT's AA/EEO plan includes minority recruitment as a priority. The plan adopted in 1988 identified Construction Tech as an underutilized position for affirmative action purposes. The plan also proposed corrective action including the possibility of a fast track training program to move women and minorities into underutilized areas.

Ramirez filed an internal discrimination complaint within the DOT. He asserted that established AA/EEO procedures were disregarded in the hiring and promotional process for the two positions for which he applied. Ramirez claimed adherence to the DOT's affirmative action policy should have resulted in his promotion. The DOT denied Ramirez's complaint citing the successful applicants' greater inspection experience.

Ramirez also sought relief from the Iowa Civil Rights Commission resulting in a probable cause determination by the commission. Ramirez subsequently initiated this action in district court, alleging employment discrimination under state and federal law, breach of employment contract, and breach of an implied covenant of good faith and fair dealing. Ramirez also demanded a jury trial. The district court granted the DOT's motion for summary judgment on all but Ramirez's employment discrimination claim. Ramirez's jury demand was stricken.

At trial the DOT presented evidence that Ramirez was not promoted because he lacked the required inspection experience. The Department also claimed its affirmative action plan was not implicated in this instance because Ramirez's present position and that which he applied for have the same classification. As a result, promoting Ramirez would not facilitate the DOT's affirmative action goals.

The district court determined Ramirez met his initial burden to establish a prima facie case of employment discrimination. However, the court also found the DOT successfully rebutted the resulting presumption of discrimination by showing that its decision was based on its need for people with more significant inspection experience than Ramirez possessed. The court concluded that the DOT's promotional decision was based on the Department's needs and its failure to promote Ramirez was not based on his nationality.

On appeal, Ramirez contends the district court's decision must be reversed because the evidence of employment discrimination is overwhelming. He also claims the district court erred by striking his demand for a jury trial.

██ Our review is for the correction of errors of law. Iowa R.App. P. 4. The trial court's findings of fact have the effect of a special verdict and are binding on us if supported by substantial evidence. Iowa R.App. P. 14(f)(1). We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the judgment. *Id.* We are prohibited from weighing the evidence or the credibility of the witnesses. *Id.* Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings. *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reins. Co.*, 431 N.W.2d at 785.

██ When the trial court following a bench trial has denied recovery because a party failed to sustain its burden of proof on an issue, we will not interfere with the trial court's judgment unless we find the party

has carried its burden as a matter of law. *Falczynski v. Amoco Oil Co.,* 533 N.W.2d 226, 230 (Iowa 1995). This heavy burden is not met unless the evidence is so overwhelming that only one reasonable inference on each critical fact issue can be drawn. *Id.*

## I.  Right to Jury Trial.

█ Ramirez urges us to re-examine our supreme court's earlier determination that a jury trial is not available in employment discrimination claims raised under the Iowa Civil Rights Act, Iowa Code section 216 et seq. *See Smith v. ADM Feed Corp.,* 456 N.W.2d 378 (Iowa 1990). Ramirez does not claim this case is distinguishable from *Smith* nor does he claim any contrary Iowa authority requires a different result. Instead, he claims that post-*Smith* amendments to federal civil rights legislation, state and federal constitutional considerations, and authority from other jurisdictions require reconsideration of the rule announced in *Smith.* In the absence of any contradictory authority, we decline to depart from the supreme court's holding in *Smith.* We accordingly affirm the district court's determination that Ramirez was not entitled to a jury trial on his employment discrimination claim.

## II.  Employment Discrimination Claim.

Ramirez also claims the trial court erred in dismissing his employment discrimination claim. He asserts there is overwhelming evidence indicating he was denied a promotion because he is Hispanic. He contends the Department's proffered reasons for denying his promotion are a pretext for discriminatory motives.

█ Proof of national origin discrimination may be established by either direct or circumstantial evidence. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Once a plaintiff has made a prima facie case of discrimination and the employer has successfully rebutted that presumption, the ultimate question of discrimination is for the finder of fact to resolve. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508–10, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407, 418 (1993). In disparate treatment cases based on circumstantial evidence, we apply the "shifting burden" analysis originated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 893 (Iowa 1990). Under this analysis, the plaintiff has the burden to establish a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If the burden is met, this raises a presumption of discrimination, and the burden then shifts to the defendant to offer legitimate, nondiscriminatory reasons for its actions. *Id.* If the defendant meets this burden, the plaintiff, who at all times retains the burden of proving discrimination, then has the burden to prove the employer's proffered reasons are pretextual. *Id.*

█ Ramirez sought to prove his discrimination claim by circumstantial evidence. To establish a prima facie case, Ramirez was required to show that he is a member of a protected class, that he met applicable job qualifications, that he was not promoted, and that the Department sought white males with similar qualifications to fill the job. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. The district court correctly found that Ramirez met this burden by showing that, despite his qualifications, he was passed over for the promotion in favor of similarly qualified white candidates.

█ As stated earlier, the burden then shifted to the DOT to offer legitimate, nondiscriminatory reasons for its promotional decision. The Department presented evidence that Ramirez's prior experience was primarily limited to surveying. There is also evidence the Department needed to employ someone with substantial inspection experience. Wayne Sunday, who made the final promotional decisions, testified Ramirez had less inspection experience and training than the successful candidates. Sunday further denied Ramirez's national origin was a consideration in the hiring decision. The district court found these facts provided a legitimate nondiscriminatory explanation for the Department's promotional decision.

This determination shifted the burden to Ramirez to prove, by a preponderance of the evidence, that the reasons offered by the Department were pretextual. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94, 67 L.Ed.2d at 215. In attempting to show pretext, Ramirez offered evidence alleging the Department's noncompliance with its affirmative action policies, its discriminatory atmosphere, and its allegedly discriminatory manner of promotional decision making. We consider each of these claims separately to determine if the district court correctly found Ramirez failed to meet his burden on this issue.

### A. Compliance with Affirmative Action Policies.

Ramirez claims that overwhelming evidence shows the DOT's failure to adhere to required affirmative action policies. He does not claim the Department's failure to implement the policy by itself requires a finding of discrimination but instead claims such failure is evidence of the Department's discriminatory intent in denying him the promotion. In support of his position, Ramirez offered extensive evidence showing what he believed to be the Department's failure to comply with its own affirmative action policies. The evidence showed the Department's 1988 AA/EEO plan established that the Construction Tech position was underutilized for purposes of affirmative action goals. Because of this underutilization, Ramirez claims the Department's policy required that he be given special consideration for the desired position.

In response to Ramirez's contentions, the DOT offered testimony explaining why it believed its affirmative action policy was not implicated. Fran Rout was the person responsible for administering the DOT's affirmative action policy at the time Ramirez applied for this position. Rout testified that because Ramirez's current position as an Engineering Aid 2 was in the same category as the Construction Tech position promoting Ramirez would not further the Department's affirmative action goals. Accordingly, Rout concluded it was not necessary for the Department to consider Ramirez's national ori-

gin in deciding whether to offer him the promotion.

The trial court found as an ultimate fact that Ramirez was not entitled to preferential consideration because such consideration was not required by the DOT's affirmative action plan. Rout's testimony provides substantial evidentiary support for the district court's determination on this issue.

### B. Hostile Environment.

We also find substantial evidence supports the district court's conclusion that the Waterloo facility was not a hostile work environment. At trial, Ramirez presented evidence that he and other minority and female coworkers at the Waterloo facility were subjected to racial slurs and inappropriate treatment. He offered testimony of an African-American coworker who was told he was hired only because of his minority status. Ramirez claims that this hostile work environment reveals the DOT's discriminatory intentions and the pretextual nature of its reasons for denying his promotion.

The district court concluded the Waterloo facility was not, as a matter of fact, a hostile work environment. We agree. Ramirez presented no evidence that anyone making the promotion decisions contributed to this allegedly hostile environment. While some individuals working at the Waterloo facility may have acted inappropriately, there is no evidence showing the alleged racist attitudes of Ramirez's coworkers negatively influenced his chances for promotion.

### C. The Hiring Process.

Ramirez cites evidence that his superiors recruited white males for the Construction Tech position who had not originally applied or were otherwise ineligible. Ramirez also accused the individual making the final promotion decisions, Wayne Sunday, of ignoring his application and making his final decision without sufficient consultation with others familiar with Ramirez's qualifications. Sunday denied these allegations. He testified that he promoted those who he believed were most qualified based on the Department's demonstrated need to hire individuals with inspection experience.

We find this evidence sufficient to support the district court's conclusion that Sunday honestly articulated his reasons for failing to promote Ramirez. We have often recognized that the district court is a better position than we to assess the credibility of witnesses. *See Excel Corp. v. Pottawattamie County,* 492 N.W.2d 225, 229 (Iowa App. 1992).

Despite Ramirez's contentions to the contrary, we find substantial evidence supports the district court's factual determinations on the pretext issue. While we recognize that this evidence may support a contrary conclusion regarding the Department's allegedly discriminatory intent, our standard of review requires us to uphold the district court's determinations if supported by substantial evidence. We accordingly do not find overwhelming evidence of discriminatory intent requiring a contrary result. The trial court correctly applied the law to its findings of fact. We affirm the decision of the district court.

We have carefully considered all of Ramirez's arguments and find them to be either covered by this opinion or without merit.

**AFFIRMED.**